**In the Matter of the Application of The County Collector for Judgment and Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1960 and Prior Years.**
**Arthur J. Dahlke, Petitioner-Appellant, v. Hawthorn, Lane & Company, Respondent-Appellee.**

**Gen. No. 50,389.**

First District, Second Division.

January 18, 1966.

45

Herbert F. Zornow, John E. Toomey and Eugene M. Wiase, of Chicago, for appellant.

Allan L. Blair, of Chicago, and David H. Armstrong, of Aurora, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

This is an appeal from an order, entered December 18, 1964, denying a petition filed under section 72 of the Civil Practice Act (Ill Rev Stats 1963, c 110, Par 72) seeking to set aside an order entered September 4, 1964, which directed the issuance of a tax deed and a writ of assistance.

The parcel of real estate in question is located on the southeast corner of 137th and Illinois Streets, or 10 West 137th Street, in Riverdale, Illinois, and is legally described as:

> Lots 1 and 2 in Block 20 in Riverdale, being the Schmidt Subdivision, in Section 33, Township 37 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

The parcel is improved with a one and one-half story frame dwelling facing 137th Street, and a four-room, tar-paper covered cottage in the rear and slightly to the west of the frame dwelling, facing Illinois Street. The first floor of the frame dwelling is occupied by the pe-

titioner herein, Arthur J. Dahlke and his wife, Adeline, and one of their six children. The Dahlkes owned the realty at the time the tax deed was directed to be issued. The second floor is occupied by a niece of Arthur Dahlke, Mrs. Shirley Kramer Fazio and her husband as tenants, and had been occupied by them for 7 years immediately preceding the issuance of the tax deed. The frame dwelling has entrances in both the front and the rear. The four-room cottage in the rear is occupied by Mr. and Mrs. James Little and their son, and had been occupied by them as tenants for 8 years prior to the issuance of the tax deed. Each tenant (the Fazios and the Littles) pays $42.50 per month in rent to the Dahlkes.

On February 5, 1962, an application was filed by the Cook County Collector for judgment and order of sale of the real estate for the delinquent 1960 real estate taxes. The property was sold on February 21st at public auction to the First Lien Company, which received a certificate of purchase therefor. The First Lien Company also paid the 1961 and the 1963 real estate taxes on the property. The period of redemption would normally have expired on February 21, 1964, two years from the date of sale, but the redemption period was extended to August 10, 1964, pursuant to section 263 of the Revenue Act (Ill Rev Stats 1963, c 120, Par 744.) On March 31, 1964, the First Lien Company filed an application in the Circuit Court, County Division, praying for the entry of an order directing the County Clerk to issue a deed to the First Lien Company if redemption from the sale should not be made. The application recited, inter alia, that Arthur J. and Adeline Dahlke were the joint owners of the real estate and that the last assessee for taxes was Arthur J. Dahlke. The application did not show who was interested in the property other than naming the Dahlkes as owners and occupants.

The certificate of purchase was sold and assigned by the First Lien Company to the respondent herein, Haw-

thorn, Lane and Company, on August 10, 1964, and the latter was substituted as applicant for the tax deed.

The application for the tax deed came on for hearing on September 3, 1964, at which time ex parte proceedings were had in which Arthur and Adeline Dahlke were neither present nor represented by counsel. To the application for the tax deed was attached an affidavit made by Mr. Ben Shapiro, which affidavit related to the service of notices of the tax deed proceedings on parties interested in the real estate. Mr. Shapiro did not testify at the hearing in support of his affidavit, but testimony was given by Mr. Erwin Rutz in support thereof. Mr. Rutz identified Mr. Shapiro's signature and stated that all the matters contained in the affidavit were true and correct to his own personal knowledge, based upon his familiarity with Shapiro's mode and method of operation, and upon Shapiro's notes which Rutz had in his possession. Mr. Rutz testified that the affidavit was correct in stating that the parcel was improved with a one and one-half story frame dwelling, that Arthur J. and Adeline Dahlke were its occupants, and that notice of the expiration of the period of redemption had been served upon them as required by law. The notes of Shapiro to which Mr. Rutz was referring appears to be the instruction by the First Lien Company upon Mr. Shapiro to serve Arthur J. Dahlke and Adeline Dahlke, the "joint owners of the property located on the southeast corner of 137th Street and Illinois Street in Riverdale, Illinois." An order was entered on September 4th which provided, inter alia, for the issuance of a tax deed to the respondent herein, and for a writ of assistance.

On October 23, 1964, Arthur J. Dahlke filed his petition under section 72 of the Civil Practice Act, wherein he alleged that he had not received notice of the expiration of the period of redemption, and that he was unable to say whether his wife had ever been served with such notice, but that he doubted she had because he was unable

49

to rely on her statements due to the fact that she had been mentally ill and had been committed to a psychopathic hospital. He also claimed that there were other occupants of the property who had not been served with notice, and charged that the respondent had committed a fraud in the procurement of the tax deed by filing a false affidavit, and requested that the tax deed be set aside.

Respondent filed a motion to vacate and dismiss the section 72 petition, which motion was denied by the trial court. Respondent thereupon filed an answer to the petition, wherein it alleged the findings of the September 4th tax deed order, and specifically alleged that the court in the tax deed proceedings found that all notices were served as required by law. The answer also alleged other matters both preceding and succeeding the September 4th tax deed order, relating to alleged correspondence and telephone conversations between respondent and petitioner.

Hearing on the section 72 petition commenced on December 2, 1964, at which petitioner presented evidence that he was employed as a truck driver for the Village of Riverdale for the preceding 13 years. Evidence was offered that he worked from 7:00 a. m. until 3:30 p. m., but that he did not get home until 6:00 or 6.30 in the evening due to the fact that each night after work he visits with friends at a tavern. The first notice petitioner claims to have received concerning the unpaid 1960 taxes and the tax deed proceedings in connection therewith, was on October 7, 1964, when a Mr. Simon, real estate agent for the respondent, visited the Dahlke home and informed Mr. Dahlke that the property had been sold for unpaid back taxes. The Dahlkes were given until October 10 to vacate the premises. The same day Mr. Dahlke attempted to locate the old tax bills on the property, and when he was unable to do so he informed his wife that they had better contact an attorney. His wife

thereupon went into the bathroom where she slashed her wrists. She was taken to a doctor in Riverdale and then was committed to the Psychopathic Hospital where she remained for 7 days until discharged by order of court. The reason given by two doctors for her commitment to the Psychopathic Hospital was "chronic brain syndrome with alcoholism and depressive reaction, recent suicidal attempts, slashed both wrists, excessive drinking, poor judgment, depressed, no insight."

On October 8th Mr. Dahlke again searched for the tax bills and, with the help of his sister, they were found under the table pad of the dining room table, together with letters from the respondent and its attorney, and a copy of the writ of assistance which had been served on Mrs. Dahlke. The same day Mr. Dahlke received a telephone call from the Sheriff's Office to the effect that he was going to be evicted and that he had better contact Mr. Simon. Petitioner saw Mr. Simon on October 10th, at which time he paid Mr. Simon $50 for rent of the first floor apartment and also signed a paper purporting to be an agreement to be the tenant of Mr. Simon.

There was uncontradicted evidence that tenants occupied the second floor of the one and one-half story frame dwelling, that tenants also occupied the cottage at the rear of the property, and that none of these tenants had ever been served with notice of the expiration of the period of redemption.

Ben Shapiro, affiant in the affidavit filed in connection with the tax deed application, testified in the section 72 proceedings that he served both Mr. and Mrs. Dahlke on April 9, 1964, with notice of the expiration of the period of redemption, and that Mr. and Mrs. Dahlke were the only two occupants of the premises. Mr. Shapiro testified that he served Mr. Dahlke at about 4:00 p. m. on April 9th, but Mr. Dahlke testified that he did not get home until 6:00 p. m. on that date. Mr. Shapiro also took a photograph of the premises on April 9th, which

was admitted into evidence, and which shows the one and one-half story frame dwelling *as the only improvement on the property;* it in no way shows the cottage at the rear of the property. Mr. Shapiro testified that he made a diligent search and inquiry to locate the persons interested in the property, by searching the county tract books between three and five months prior to the expiration of the period of redemption. When asked if anything else was done in the nature of a diligent search and inquiry, Shapiro answered, "I made nothing else" and "I did nothing." The only time the property was visited by Shapiro was on April 9th, the date he testified that he served the Dahlkes with notices. It in no way appears that a tour was made of the premises, nor that Shapiro visited or inspected the cottage in the rear or inquired of any of the neighbors in an effort to determine whether anyone other than the Dahlkes was in actual possession of the premises.

On December 18, 1964, the trial judge entered the order appealed from, which found: (1) that on April 9, 1964, Arthur J. Dahlke was served with notice pursuant to law, (2) that Arthur J. Dahlke was the owner of the property in question and was in full possession of the property, and (3) that no fraud was committed by Hawthorn, Lane & Company, First Lien Company, Erwin Rutz, Ben Shapiro, or anyone else in the procurement of the tax deed issued in this cause. The court ordered that the petition of Arthur J. Dahlke for relief under section 72 be denied.

The petitioner-appellant maintains that respondent filed its application for the tax deed and writ of assistance predicated upon a false affidavit, thereby fraudulently procuring the deed. We agree.

It is well settled in tax deed proceedings that section 72 of the Civil Practice Act may not be used to relitigate any issue which has been passed upon by the trial court, in absence of fraud. Remer v. Interstate

Bond Co., 21 Ill2d 504, 510, 173 NE2d 425; Shapiro v. Hruby, 21 Ill2d 353, 358, 172 NE2d 775. As stated in the case of Urban v. Lois, Inc., 29 Ill2d 542, at page 548, 194 NE2d 294, "While Section 263 of the Revenue Act regarding the giving of notices must be complied with, a finding that such notices were duly given cannot be disputed in a collateral proceeding." The claim is made that since the tax deed order of September 4th found that all notices required by law were in fact served, this issue cannot be relitigated in the section 72 proceedings. However, if it is established that the deed has been procured by means of fraud and if the facts which establish such fraud had not been made known to the court in the tax deed proceedings, nor had been passed upon by the court, such circumstances would clearly be sufficient to warrant relief in a section 72 proceedings. Remer v. Interstate Bond Co., 21 Ill2d 504, 513, 514, 173 NE2d 425.

Section 5 of article IX of the Illinois Constitution provides that a right of redemption from all real estate tax sales shall exist in favor of owners and persons interested in such real estate for a period of not less than two years from the date of sale. The Constitution requires the General Assembly to provide for notice to be given to the owners of and all parties interested in the property of the fact of sale and of the expiration of the period of redemption. It is specifically provided that occupants in all cases shall be served with personal notice before the time of redemption expires. Ill Const, art IX, sec 5.

Pursuant to this mandate of the Constitution the General Assembly enacted section 263 of the Revenue Act (Ill Rev Stats 1963, c 120, Par 744) which provides that no purchaser or assignee of such purchaser of real estate which has been sold for nonpayment of taxes shall be entitled to a deed until notices shall be served upon three classes of persons: (1) occupants or persons in actual

possession, (2) the person in whose name the property was last assessed for general taxes, and (3) owners or parties interested in the property. Section 263 specifically provides that those in the first class, the occupants or persons in actual possession, shall be personally served with notice; those in the other two classes must be personally served if they can be found within the county upon diligent search and inquiry, otherwise service is to be made by mailing a copy of the notice, by publication, or by service upon them by service upon the occupants, as the case may be.

The affidavit in support of respondent's tax deed application did not fully and completely set out all facts concerning the property in question. It is substantially deficient in failing to show the four-room cottage as an improvement on the premises, in failing to name the Fazios and the Littles as tenants on the premises, and in failing to state that the Fazios and the Littles were served with notice of the expiration of the period of redemption. Furthermore, testimony given in support of the affidavit at the tax deed hearing was based entirely upon hearsay. Ben Shapiro was the affiant, but the matters in the affidavit were testified to by Mr. Rutz from his "familiarity with Shapiro's mode of operation and Shapiro's notes." The notes of Shapiro were apparently nothing more than the instruction to Shapiro by the First Lien Company to serve Mr. and Mrs. Dahlke, which instruction was itself deficient in failing to show the other occupants of the premises (in the second floor apartment and the four-room cottage) and in failing to provide for service of notice upon these occupants. In the section 72 proceedings, Mr. Shapiro admitted that he visited the property only once, the date he allegedly served the Dahlkes. Although he stated he spent a number of hours in the vicinity, he neither made a tour of the premises nor did he attempt to ascertain from the neighbors who the occupants of the premises were. The photographs

introduced into evidence *by the petitioner* in the section 72 proceedings portraying the four-room cottage in the rear of the property make it clear that the cottage was a part of the premises and was occupied as a dwelling place. Respondent's claim that the cottage appears to be nothing more than a garage is clearly refuted by these photographs. Finally, the affidavit infers that the sole occupants of the premises were the Dahlkes and their family.

The case of Gage v. Lyons, 138 Ill 590, 28 NE 832, is in point. A tenant of property sold for delinquent taxes was not served with the notice of the expiration of the period of redemption, although it was undisputed that his wife had been served. The court stated that it was not necessary that a reason be given why a tenant in actual possession should be served with notice. As the court said at page 595, "It is enough that the statute requires it as a condition precedent to the right to have the tax deed issued. It does not appear that the service of the notice on the wife of [the tenant] was intended as service upon him, but if it was, service of notice upon the wife of the tenant in possession is not sufficient to meet the requirements of the statute, which is imperative, and must be followed." See also Cotes v. Rohrbeck, 139 Ill 532, 28 NE 1110, and Gage v. Parker, 178 Ill 455, 53 NE 317.

The facts of the instant case clearly show a lack of good faith in making of the affidavit with respect to occupants, improvements, service of notices, and diligent search and inquiry, and consequently constituted a fraud upon the court issuing the tax deed order.

■■ In 1951 the General Assembly made a sweeping series of changes in the procedure for the issuance of tax deeds. Ill Rev Stats 1951, chap 120, Pars 734, 744, 746, 747, 749, 750 and 751. See Cherin v. R. & C. Co., 11 Ill2d 447, 143 NE2d 235; Shuck v. Guarantee Bank & Trust Co., 26 Ill2d 123, 186 NE2d 41; Urban v. Lois,

Inc., 29 Ill2d 542, 194 NE2d 294; and Chi-Kent L Rev, Vol 40, p 156. The purpose of these amendments was to provide judicial safeguards in the issuance of tax deeds by taking the matter out of the hands of the County Clerk, where it was purely a ministerial act, and placing it under the jurisdiction of the courts, thereby rendering tax titles merchantable. Under the statutes today, once the court acquires jurisdiction by the filing of the application for judgment and order of sale, a determination by the court that all statutory prerequisites had been complied with is conclusive. See Urban v. Lois, Inc., 29 Ill2d 542, 194 NE2d 294; Shapiro v. Hruby, 21 Ill2d 353, 172 NE2d 775. Respondent, therefore, maintains that the findings of the September 4th tax deed order cannot be questioned in a section 72 proceedings.

However, as the attorneys for the appellee stated in open court, and as the report of proceedings at the hearing on the application for the issuance of the tax deed indicates, no judge was present at the time of the hearing on September 3rd. An assistant state's attorney and the respective applicants for tax deeds were alone present. By its very nature this practice defeats the entire purpose of the 1951 amendments to the Revenue Act by eliminating the judicial safeguards therein provided. Had a judge been present and had the facts brought out in the section 72 proceedings relative to lack of good faith in the making of the affidavit been made known to the court in the tax deed proceeding, no deed would have been issued. While it is the policy of this state to render tax deeds merchantable, as evidenced by the 1951 amendments, the clear mandate of the Constitution, providing for the protection of the rights of all persons interested in real estate, cannot be circumvented. Unquestionably, the Constitution cannot be changed, altered or modified by the passage of a statute. Requiring applicants for tax deeds to follow the requirements of the Constitution and the implementing statute by mak-

ing diligent inquiry and serving notices, does not appreciably burden tax buyers, and in no way interferes with the merchantability of tax deeds.

■ The value of the property in question is approximately $15,000. The delinquent 1960 tax for which it was sold amounts to $181.46 including interest and costs. It does not appear that the property was in any way encumbered by mortgage or lien. It further appears, and is in no way disputed, that the petitioner himself in May and September of 1963 paid the 1962 tax bill, aggregating some $170. It is a highly unreasonable set of circumstances that a property owner would pay a current real estate tax on property which is unencumbered by debt and yet be willing to lose the property by deliberately failing or refusing to exercise his right of redemption on a past delinquent tax, especially where the amount paid on the current tax is almost identical to the amount necessary to exercise the right of redemption. Mr. Dahlke was employed for 13 years prior to the date of the tax sale as a truck driver for the Village of Riverdale, raised a family of 6 children, and was burdened by a mentally unstable wife. He received some $85 per month in rent. At the section 72 proceedings he testified that his wife took care of the payment of all bills, including real estate tax bills, and never showed him any mail received in connection therewith. While the 1962 tax bill paid by petitioner was stamped "sold 1962" and "sold 1963," neither marking is clear; further, these markings do not constitute the notice required by the Constitution and the statute. Superimposing the situation in which petitioner was involved upon the facts of respondent's failure to serve notices as required by the clear mandate of the Constitution and to make a diligent search and inquiry to find the persons connected with the property, results in exactly the type of situation which the constitutional and statutory provisions attempt to avert.

██ Respondent maintains that because the court found that Mr. Dahlke had been served with notice, he is in no position to complain about the lack of service on the tenants. The cases cited by respondent in support of this position are not in point. In People v. Conleur, 294 Ill 139, 128 NE 339, a large number of real estate owners were joined in a single action for the issuance of tax deeds for nonpayment of taxes upon the respective parcels. The validity of one of the tax deeds was challenged by the owner of a parcel involved, on the grounds that a mortgagee who was interested in the parcel was not served with the notice as mortgagee. The owner had been served with notice, and the mortgagee had been served with notice in his individual capacity. The court held that the owner was in no position to challenge the validity of the deed for the reason that the mortgagee "was notified for whatever interest he had and the notices were sufficient." The case of Meyer v. Surkin, 262 Ill App 83, is likewise distinguishable for the reason that the alleged defect in the portion of the decree appealed from in no way affected or concerned the appellant. Here, on the contrary, respondent's failure to serve the notices as required by the Constitution and by Statute, and to make diligent inquiry to locate all parties connected with the property, whereas such matters were affirmatively sworn to in the affidavit as having been done, constituted a fraud upon the court which issued the tax deed, thereby rendering the deed void.

██ Respondent contends that the payment of rent by the petitioner to Mr. Simon amounted to an admission by the petitioner of the validity of the status of respondent as his landlord. Under the circumstances of this case it clearly appears that petitioner was under duress and was presented with a bitter situation. He would either lose a valuable piece of property, which was unencumbered by any debt, and be evicted, or else pay the amount of rent demanded pursuant to a court decree. As

58

stated by petitioner himself, there was "nothing else he could do, he was losing his property." This situation is not the same as that involving an ordinary tenant who accepts a lease from the landlord in the face of eviction, but rather is a situation where the owner is threatened with eviction by one who has obtained a deed to the property by means of fraud.

Finally, petitioner maintains that error was committed when the trial court in the section 72 proceedings denied his motion for a change of venue. However, it clearly appears that petitioner knew the section 72 proceedings was to be heard by the trial judge who allowed petitioner's petition to proceed under section 72 of the Civil Practice Act on October 23, 1964, and who ruled on respondent's motion to vacate the section 72 petition on November 20, 1964. Furthermore, the motion for change of venue was not filed until November 27th, after the hearing on the section 72 petition had been set for December 2nd and after the trial judge had passed upon substantive issues in respondent's motion to strike on November 20th. See City of Chicago v. Hamlin, 24 Ill 2d 148, 180 NE2d 473. Under these circumstances we feel there was no error committed by the trial judge in denying the motion for change of venue.

The order is reversed and the cause remanded with directions to vacate the order of September 4, 1964, upon reimbursement to respondent for the amount of 1960 delinquent taxes, interest and costs, together with all other taxes subsequently paid, with interest thereon, and to cancel and annul the deed from the County Clerk and remove it as a cloud upon the title.

Order reversed and cause remanded with directions.

BRYANT, P. J. and LYONS, J., concur.