People of State of Illinois, Plaintiff Below, v. Charles V. Muscarello, Trustee et al., Defendants Below.
Amedeo A. Yelmini, Petitioner Below, Appellee, v. Edward Vail, Respondent Below, Appellant.

Gen. No. 45,915.

Opinion filed April 14, 1953. Released for publication May 4, 1953.

FRANCIS M. LOWES, of Chicago, for appellant.

WILLIAM M. DOTY, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In this case a piece of property described as an old frame house at 4242 North Hermitage avenue, Chicago, was sold for taxes. Defendants to the People's complaint were Charles V. Muscarello, as trustee under a trust agreement dated December 12, 1948, and Edward Vail, a widower. The price bid was $714, offered by Amedeo A. Yelmini. A certificate of sale was issued to him September 7, 1949. After the expiration of the period of redemption, the county clerk of Cook county duly executed a tax foreclosure deed on January 16, 1952. At the time of the filing of the complaint Edward Vail, one of the defendants, was in possession of

the premises and continued to remain on the premises, whereupon Amedeo A. Yelmini, after making a demand, filed his petition for a writ of assistance. All the foregoing facts are admitted.

Edward Vail by leave of court filed an answer May 15, 1952 in which he admitted all the facts above set forth. He asserted, however, that the persons who demanded possession of him were principals, not agents. He then recited certain transactions had by him with one Schultz, operator of a tax service, with one Cado, and with Muscarello. He further averred that he entered into a contract to sell the premises to Cado for $8,500; that Muscarello was to have a tax suit instituted to clear the taxes and was to bid in the property for Vail, and that Vail was to give Muscarello a mortgage for the amount or sell the premises and pay the costs of such tax suit from the proceeds of such sale. He further averred that a dispute arose between himself and Cado; that Cado sued Vail and Muscarello to recover the $500 paid by Cado on the purchase price, and that Muscarello filed an interpleader to determine whether Vail or Cado was entitled to the $500. We are left in doubt as to the significance of this. He then charged *on information and belief* that Yelmini, purchaser at the sale, was acting as agent and employee of Schultz and Muscarello in bidding in the premises and had knowledge of the facts. He attached a copy of a letter signed by one Doty, a lawyer, purporting to show moneys owing by Vail to Yelmini, amounting to $5,746.86.

█ There is no transcript of what occurred at the time the matter was heard. The court entered an order, reciting that he heard argument, and granting the writ of assistance. The question before us, therefore, is whether the answer sets up a defense. Vail in his answer does not assert what his interest is in the property. Nowhere does it appear that he is the owner.

90

If he were the owner, was it the purpose of his alleged agreement to chill bidding at the tax foreclosure sale? Was it not, in effect, a plan to avoid his obligation to pay taxes? He does not explain. The complaint to foreclose the tax lien merely asserted that he had an interest in the property and that this interest was, of course, foreclosed by the decree. Assuming that he was the owner, he then stood by and permitted the People to prosecute the foreclosure suit and sell the property to one who was secretly his agent.

██ A court of chancery has discretion to refuse to issue a writ where there is a reasonable prospect that the party in possession may make a successful defense of his possession either at law or by the aid of a court of equity. *Kerr v. Brawley,* 193 Ill. 205, 207. *Stubbs v. Austin,* 285 Ill. App. 535, discussed by the parties in this case, held in essence that a writ of assistance could not issue until there had been a title adjudication. There was such an adjudication in this tax foreclosure. What Vail now asserts is, in substance, that the man who acquired title holds it as his agent, and he wants that question adjudicated on an issue raised on a petition for a writ of assistance. In *Flowers v. Brown,* 21 Ill. 270, referred to in the *Stubbs v. Austin* case, *supra,* a foreclosure decree was entered, ordering the property to be sold. Defendant then appeared and charged that after the decree, he entered into a new agreement with complainant, whereby he paid complainant a sum of money upon account and was to have time to discharge the indebtedness. The court held that this was sufficient to show that his claim had some merit and that, therefore, a writ of assistance ought not to issue. In this case, however, there are such obvious defects and omissions in Vail's answer, together with statements of such doubtful value as to his interest and the agency of Yelmini, that he has not even presented a colorable right.

██ Prior to emergence from the depression and the commanding necessity of finding a method whereby properties could be cleared of delinquent taxes and again made marketable, the statutes were so strictly construed that it was almost impossible to make a tax title. The need for modification has since been recognized and a different public policy has resulted. This change is evidenced by chap. 120, sec. 747 Smith-Hurd's Annotated Statutes, 1951 [Jones Ill. Stats. Ann. 119.763], wherein it is provided that the county court shall issue a writ of assistance to put a grantee in possession of real estate sold for taxes; that tax deeds shall be uncontestable, except by appeal from the order of the county court directing the county clerk to issue the tax deed, and that *"This section shall be liberally construed so that tax deeds herein provided for shall convey merchantable title."* [Italics added.]

██ Plaintiff may have a claim based upon an alleged fraud on the part of agents employed by him, but that is a claim which he should assert in an independent suit, and not have it determined as a collateral issue in this suit.

*Order affirmed.*

ROBSON, P. J. and TUOHY, J., concur.