(No. 35688.—

LAURA A. REMER, Appellant, *vs.* INTERSTATE BOND COMPANY *et al.*, Appellees.

*Opinion filed March 29, 1961.*

GARDNER, CARTON, DOUGLAS, ROEMER & CHILGREN, of Chicago, (JAMES A. VELDE, WILLIAM J. NEALON, and THOMAS ARTHUR, of counsel,) for appellant.

ALLAN L. BLAIR, and MACLEISH, SPRAY, PRICE & UNDERWOOD, both of Chicago, (ROBERT S. CUSHMAN, and JOHN J. O'BRIEN, of counsel,) for appellees.

Mr. Justice Klingbiel delivered the opinion of the court:

This direct appeal is prosecuted by appellant, Laura A. Remer, to review orders of the county court of Cook County striking a petition by which she had sought to vacate a prior order of that court directing the issuance of a tax deed to Interstate Bond Company, and refusing her leave to amend.

The property in question consists of two city lots located at 5822 North Western Avenue, Chicago, and is improved with a four-story brick and concrete warehouse which for some years has been occupied by Amstadter Storage and Van Company and the Kleinfeld Construction Company. In 1950, Exchange National Bank of Chicago, as trustee under a land trust, executed and delivered to appellant two notes totalling $75,000 secured by a trust deed naming the Chicago Title and Trust Company as trustee and providing for the payment of monthly installments thereon to any bank designated by the holder of such notes, or in the absence of such direction, to H. L. Marcus, Chicago. This trust deed was duly recorded with the Cook County recorder of deeds on December 21, 1950, and regular monthly payments were made until August 1, 1959. Meanwhile, however, general taxes for the year 1954 having become delinquent, the property was sold on April 3, 1956, under tax judgment to Interstate Bond Company for the sum of $3,934.66, and taxes for 1955, 1956, and 1957 were subsequently paid by the purchaser. The period of redemption, which would normally have expired on April 3, 1958, was thereafter extended by the buyer to November 26, 1958, and on June 27, 1958, Interstate Bond Company filed its petition for tax deed. Statutory notice thereof, naming December 11, 1958, as the date application would be made for the deed, was personally served upon Chicago Title and Trust Company, Exchange National Bank, Amstadter Storage and Van Company, and Amstadter Management Com-

pany (the latter being the party in whose name the property was last assessed for taxes) on July 3, July 7, and July 16, 1958, respectively; and notice to "owners of or parties interested in said real estate" and "unknown owners" was published in the Chicago Daily Calumet on July 29, 30, and 31, 1958. By orders of court entered December 11, 1958, and January 30, 1959, the matter was continued until March 17, 1959, at which time an application for deed was filed, and, upon hearing, an order directing issuance of a tax deed was entered expressly finding, among other things, that all notices required by law had in fact been given. Interstate Bond Company acquired a writ of assistance on July 17, 1959, and on July 30, 1959, purportedly conveyed the property to respondent Julie L. Brown, the latter being granted a writ of assistance on August 4, 1959.

The petition to vacate the tax order and for permission to redeem filed September 3, 1959, named Interstate Bond Company, Julie L. Brown, Exchange National Bank of Chicago, as trustee, Amstadter Management, Amstadter Storage and Van Company, Chicago Title and Trust Company, as trustee, Kleinfeld Construction Company, the county clerk of Cook County, and the Cook County treasurer as parties respondent. It alleged that the sum of $32,633.20 remained unpaid under the trust deed, that the property was worth some $90,000, that Interstate Bond Company had failed to make a diligent inquiry to determine the persons interested in the property, that a diligent investigation would have revealed petitioner as a Chicago resident and H. L. Marcus as her attorney, that petitioner was not informed of the tax sale until July 28, 1959, that the publication as to unknown owners was invalid, and that the order for deed was void and constituted a denial of due process of law.

An answer was thereafter filed by Interstate Bond Company denying the allegations concerning lack of diligent inquiry and jurisdiction, stating that petitioner, as a holder

of notes under a trust deed, was not entitled to any statutory notice, and alleging that the tax order was not subject to collateral attack. Respondent Julie L. Brown moved to strike the petition for reasons similar to those contained in Interstate Bond Company's answer and for the further reason that she was a *bona fide* purchaser for value, but by agreement of parties the latter issue was deferred for future consideration and was not passed upon by the court in striking the petition on October 5, 1959. Subsequently, petitioner asked leave to amend her original petition so as to further allege that her trust deeds were secured only by the property in question without any personal liability attaching thereto and in fact constituted a purchase money mortgage; that Julie L. Brown was not a *bona fide* purchaser for value; that proper notice of the extended redemption period was not served; and that Interstate Bond Company, Amstadter Storage and Van Company, and Julie L. Brown had fraudulently "combined and conspired to conceal from petitioner knowledge of the tax sale proceeding until it would be too late for her to redeem and thereby to deprive her of the lien of the mortgage trust deed." Upon denial of the request, this appeal followed.

In support of her position that the trial court erred in striking her petition and refusing her leave to amend, petitioner contends (1) that such relief was warranted by sections 50(2), 50(8), and 72 of the Civil Practice Act, (2) that the record clearly shows the publication of notice was defective and permeated with fraud, (3) that she was entitled to notice under the provisions of the Revenue Act, and (4) that in the absence thereof, she was denied due process of law.

Section 263 of our Revenue Act (Ill. Rev. Stat. 1957, chap. 120, par. 744,) requires as a prerequisite to the issuance of a tax deed the giving of a purchase notice by the buyer or his assigns to all persons in actual possession of the property, to the person in whose name the real estate

was last assessed for taxes, and to "the owners of, or parties interested in such real estate, including trustees and mortgagees of record, if they can upon diligent inquiry be found in the county," at least three months prior to the date the period of redemption, or extended period, expires. If such owners or parties interested upon diligent inquiry cannot be found in the county, or if the identity of such individuals is unknown, then service of this notice may be had by publishing the same three times "in some newspaper printed and published in such county." This section also provides that the purchaser may extend the redemption period so as to expire not later than three years from the date of sale, and if the period is so extended, the required notices must be given "at the specified times prior to the expiration of the extended period of redemption."

Section 266 of the Revenue Act (Ill. Rev. Stat. 1957, chap. 120, par. 747,) provides for the filing of a petition for deed by the purchaser at any time within five months prior to the expiration of the redemption period and the giving of notice thereof in the same manner specified in section 263. If the purchaser desires, he may insert in the notices required by section 263 the fact of filing the petition for deed and the date on which he intends to apply for an order thereon if the real estate is not redeemed, in which case the notice provided by section 266 is not required. This section goes on to say that "Tax deeds issued pursuant to this section shall be incontestable except by appeal from the order of the county court directing the county clerk to issue the tax deed."

Nevertheless, petitioner argued that since neither the order directing issuance of the tax deed nor the order for writ of assistance contained an express finding that no just reason existed for delaying appeal, these orders at no time became final, and in accordance with section 50(2) of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 50(2),) were subject to revision at anytime. This theory is

without substantial merit. The order for issuance of deed disposed of all issues therein presented and, when entered, became a final, appealable order without regard to the fact that writs of assistance might later be issued pursuant thereto.

Neither do we believe that section 50(8) of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 50(8),) may be successfully asserted in the present case. That provision applies only to judgments or decrees entered against "any defendant who has been served by publication with notice of the commencement of the action" and is not applicable to the notice requirements for tax deed contained in the Revenue Act. *People ex rel. Hudson* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 360 Ill. 180.

As we pointed out in *Southmoor Bank and Trust Co.* v. *Willis,* 15 Ill.2d 388, by its enactment of section 266 of the Revenue Act, the legislature intended to render tax titles incontestable except by direct attack unless lack of jurisdiction appeared upon the face of the record itself so as to warrant the application of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 72.) In the absence of such an apparent defect, prior findings concerning sufficiency of Revenue Act notices may not be disputed by the last-cited statute.

As to the contention of the petitioner that notice to her was defective, the record discloses the following: At the time of filing the application for tax deed, Interstate Bond Company presented an affidavit in support thereof which stated that personal service of notice was had upon all persons in actual possession of the property; against the party in whose name the premises were last assessed for taxes; on Exchange National Bank of Chicago, as trustee, the record owner of the property; and on Chicago Title and Trust Company, as trustee, under a recorded deed of trust; and that upon diligent inquiry other owners or persons interested therein could not be found. At the time of

hearing upon the application for deed, the secretary of Interstate Bond Company, in testifying as to the above matters, stated that he had inspected the records of the Cook County recorder of deeds in search of any owners or parties interested, including trustees and mortgagees of record, and service of notices was had on all parties whose rights appeared. Thus, insofar as the record is concerned, material proof was offered as to the need for publication against unknown owners and interested parties. Ill. Rev. Stat. 1957, chap. 120, par. 744.

As to the publication itself, it appears that it was accomplished in the Chicago Daily Calumet, a secular newspaper printed and published in Cook County, on three occasions, being successive days in July, 1958. Although our Notice Act (Ill. Rev. Stat. 1957, chap. 100, par. 3,) provides for publication during three successive weeks, it specifically exempts therefrom those situations where, as here, the number of publications is fixed by another statute. Similarly, section 15 of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 15,) refers only to matters not controlled by separate statute and has no application to the present case.

It is also clear that the publications occurred not more than five months prior to the expiration of the redemption period as required by sections 263 and 266 of the Revenue Act. Petitioner admits that this is true if we consider November 26, 1958 (the date to which the redemption was extended) as the expiration date, but insists that since property may be redeemed at any time prior to the issuance of a tax deed, the five-month period should have been computed from the date the latter event occurred, namely March 17, 1959. After prescribing the means by which a purchaser may extend the redemption period, section 263 states that if an extension occurs, all notices must be given at the specified times "prior to the expiration of the extended period of redemption." Thus, it is the expiration of the two-year statutory redemption period, as may be extended

by the purchaser, which is controlling rather than the time a deed issues. Indeed, this is the only construction which may prevail. A purchaser can specify the date upon which he intends to apply for a tax deed, but he has little control over when the court will hear the matter or pass upon his request. And where, as in the present case, the issuance of a tax deed is delayed, it should not have the effect of voiding an otherwise valid notice. Thus the literal requirements of sections 263 and 266 of the Revenue Act were complied with.

Petitioner's further contention that she is entitled to a hearing under section 72 of the Civil Practice Act is predicated upon her allegation that a fraudulent conspiracy took place to conceal the tax foreclosure proceedings from her, that the judgment was obtained by deception, and that the proceedings were tainted with fraud. To support this argument she alleges that the publication notice was published in a newspaper named *The Daily Calumet* that had a circulation in the southeast corner of Chicago, whereas the property involved is in the far northwest section of the city, and that the publication in this distant and little-known newspaper was intended not to be seen by any person interested.

Petitioner further alleges that the affidavit of Harry G. Lawrence, filed in an effort to show that due diligence had been used to find interested persons, was either negligently or intentionally false. She alleges that the trust deed that was recorded in the recorder's office stated that the notes were payable at the office of H. L. Marcus in Chicago, and the trust deed stated it should be mailed to H. L. Marcus, 134 North La Salle Street, and that the trust deed was recorded in 1950 and, at that time and ever since, Marcus has had an office at 134 North La Salle Street. The affiant stated that, between five and three months before the redemption period would expire, he made diligent inquiry to find all parties interested in the real estate. In describing

the nature of his inquiry, he said it consisted of inquiry concerning the whereabouts of interested persons "at the addresses, if any, listed in the documents or records in the office of the person acting as recorder of deeds" of Cook County. Petitioner alleges that if affiant had made inquiry he could have found the whereabouts of the owner of the mortgage notes at the office of H. L. Marcus.

The proposed amendment to the petition alleged that the petitioner was not the mortgagee but the full owner of the property before November, 1950, when she sold it to the Amstadter company. At its request the deed was made to the Exchange National Bank as trustee. The bank executed the mortgage notes and trust deed, which were issued to petitioner as a purchase money mortgage. Later, the Amstadter company failed to pay the 1954 real-estate taxes, and the present proceeding resulted. Petitioner alleges that the Amstadter company had knowledge of this proceeding but did not notify petitioner, and, despite this knowledge of the impending loss of the property, the Amstadter company continued to pay the monthly installments of interest and principal to petitioner, even after a writ of assistance to secure possession of the property was served on the Amstadter company.

We now direct our attention to the claim of petitioner that she was entitled to personal notice under the provisions of the Revenue Act by reason of her ownership of the two notes secured by the mortgage, and that in the absence thereof she was denied due process of law. We believe this claim to be untenable for the simple reason that there is no requirement in the statute that personal notice be given to a noteholder. Furthermore, we believe such a provision often would be wholly impracticable because of the multitude of persons holding notes and bonds secured by trust deeds.

Finally we come to the contention of petitioner that she is entitled to a hearing on her allegation of fraud. That pe-

514

titioner is entitled to a hearing on this allegation is evident under section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1959, chap. 110, par. 72.) She sought to allege a conspiracy to conceal the proceedings from her : a matter not appearing in the record which, if known to the court at the time of the judgment, would have prevented its rendition. This matter had not been in issue, nor had it been passed upon, and if true would clearly be sufficient to warrant relief under section 72. Cf. *Southmoor Bank and Trust Co.* v. *Willis,* 15 Ill.2d 388.

It is true that where a court has jurisdiction of the parties and the subject matter its judgment is not subject to collateral attack. (*Cherin* v. *The R. & C. Company,* 11 Ill.2d 447.) This does not mean, however, that a judgment obtained by deception may not be questioned after the expiration of thirty days. If proceedings regular in form are tainted with fraud or coercion, the court is not helpless to grant relief. The legislative policy favoring conclusiveness in the county court's determination does not displace the higher policy of the law which requires a remedy for every wrong. If the order was obtained by fraud, as petitioner alleges, elementary principles of law require that relief be granted.

The orders are reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*