SONIA ZEVE, Appellee, *vs.* WILLIAM B. LEVY, Trustee, Appellant.

*Opinion filed May 18, 1967.*

KLUCZYNSKI, J., took no part.

ALLAN L. BLAIR, of Chicago, (BRUCE M. BUYER and RAYMOND J. MILLER, of counsel,) for appellant.

JOHN A. DOYLE and GERALD M. CHAPMAN, both of Chicago, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Sonia Zeve, hereinafter referred to as petitioner, filed in the Cook County circuit court her petition under section

72 of the Civil Practice Act (Ill. Rev. Stat. 1963, chap. 110, par. 72,) seeking to set aside a tax deed to improved residence property formerly owned by her. At the close of petitioner's evidence, the trial court allowed a motion by the tax-deed holder for a "directed verdict" and denied the petition. The First District Appellate Court reversed, directing the trial court to vacate the issuance of the tax deed (72 Ill. App. 2d 297). We granted respondent's petition for leave to appeal. No brief has been filed here by petitioner.

The following factual statement is substantially as set forth in the appellate court opinion: Sonia Zeve became the sole owner of the subject property upon the death of her husband in 1958. In 1959 she sold it to Glenn Pettit and his wife, Janette, on contract. That December she moved from the property to 5404 West School Street in Chicago, where she still resides. Subsequent real-estate taxes were to be paid by the purchasers who did so for 1959, but failed to pay those for 1960. On February 5, 1962, the Cook County collector filed an application for judgment and order of sale for the delinquent tax. This order was entered on February 16, and on March 20 the property was sold at public auction to the First Lien Company, respondent's predecessor in interest, for the unpaid 1960 taxes. Certificates of purchase were issued. Pursuant to section 263 of the Revenue Act (Ill. Rev. Stat. 1963, chap. 120, par. 744) the period of redemption was extended to October 19, 1964.

On June 2, 1964, the First Lien Company applied for a tax deed. Respondent was thereafter substituted as applicant in that proceeding. At the October 22, 1964, *ex parte* hearing on the application, Ben Shapiro, a professional process server, testified on behalf of respondent and filed an affidavit. In his testimony and affidavit, Shapiro represented that the subject property was "improved with a one and a half story frame building with siding, a two-family residence"; that Richard Pettit (the contract purchaser's son)

was living on the first floor and Glenn Pettit, the contract purchaser, on the second floor, and that there were no other occupants of the building; that on June 8, 1964, he had visited the premises and had personally served notice of the action to obtain a tax deed upon both Richard and Glenn Pettit, and that he had advised each of the contents thereof. In the affidavit he stated that he "made diligent search and inquiry to ascertain the names and whereabouts of assessees, title holders, and all persons interested in the above described premises, in order to serve them with notice of said sale and the expiration of the period of redemption as required by law * * * [and] as a result of said inquiries * * * ascertained that Charles Zeve and Sonia Zeve, his wife, now live in California but the contract purchaser refused to give * * * the Zeves' California address." He testified that he obtained the information that Charles and Sonia Zeve live in California from Glenn Pettit and that Glenn Pettit told him that the Zeves "were some place in San Bernardino, but refused to give me any further information." Pursuant to sections 263 and 266 of the Revenue Act (Ill. Rev. Stat. 1963, chap. 120, pars. 744, 747), notice by publication had been given to Charles and Sonia Zeve, with copies being sent by registered mail to their last known address—the subject property. The mail notices were returned marked "Moved—Not Forwardable". An order to issue the tax deed was entered on October 28, 1964.

On December 16, 1964, Sonia Zeve filed her petition under section 72 of the Civil Practice Act. She alleged she knew nothing of what had occurred until November 28, 1964, at which time Glenn Pettit forwarded a letter to her in which respondent notified Pettit that title to the property was now in respondent's name and that further payments were to be made to him. She further alleged that she resided at 5404 West School Street in Chicago at all relevant times, and that her son, who was one of two Zeves listed in the

Chicago telephone directory, was not contacted as to her whereabouts. In an affidavit attached to petitioner's complaint, it is further alleged, among other claims, that the tax purchaser committed a fraud upon the court in that the affidavit and testimony of Ben Shapiro in the tax-deed proceeding to the effect that he had made an inquiry of Glenn Pettit as to the Zeves' location and that Glenn Pettit had told him that they were in California but refused to disclose their address was false and fraudulent in that Ben Shapiro did not have any such conversation with Glenn Pettit.

Respondent's answer denied these allegations and set up, as an affirmative defense, that petitioner had filed a verified complaint against Glenn Pettit for wrongfully informing Shapiro that she had moved to California and that such action was incompatible with the instant claim of fraudulent misrepresentation by Shapiro.

At the hearing in the section 72 proceeding, Glenn Pettit's father, Alvie, who also resided on the subject property in June of 1964, testified that he talked to Shapiro about that time. He further testified that he told Shapiro his son was the contract purchaser of the property and was not at home, that Shapiro told him he was a tax man, and that, when Shapiro asked about the original owner, Alvie Pettit said she was in California. He then stated he "had made up that story himself to get rid of bill collectors."

Glenn Pettit was also called as a witness for the petitioner. He admitted that Mrs. Zeve had a lawsuit pending against him. He testified that he had not had a conversation with Shapiro. He stated that, while he did direct his father to tell people that Mrs. Zeve was in California, she had never told him to say this. The tape recording of a conversation between Glenn Pettit and respondent's attorney was then introduced into evidence. In it he contradicted his statement that Mrs. Zeve never told him to tell people who inquired for her that she went to California, but on redirect examination he said that his recorded statement was false

and that it was his father who first had the idea to tell people that Mrs. Zeve had gone to California. In the taped conversation, he reaffirmed his statement that Shapiro had not talked to him, saying Shapiro talked only to his father.

After Mrs. Zeve testified in her own behalf she rested her case. The court then allowed respondent's motion for a "directed verdict", specifically finding that there had been no fraud in the procurement of the tax deed.

Finding "that the inquiry made by respondent * * * into the whereabouts of Mrs. Zeve * * * fell far short of qualifying as 'diligent'," and that his "representation that diligent inquiry had been made constituted a fraud upon the court which issued the tax deed, thereby rendering the deed void", the appellate court reversed the trial court and ordered it to vacate the issuance of the tax deed. In reaching this conclusion the appellate court relied principally upon *Shockley* v. *Good,* 13 Ill.2d 298; *Graham* v. *O'Connor,* 350 Ill. 36, and *In re Application of County Collector (Dahlke* v. *Hawthorne, Lane & Co.),* 67 Ill. App. 2d 44. *Shockley* involved a pre-1951 tax-deed proceeding governed by totally different statutory provisions as was emphasized in our opinion therein; *Graham* was also a pre-1951 decision and only indirectly involved a tax deed, the principal issue there being the scope of "due and diligent inquiry" necessary to sustain constructive service in a quiet-title proceeding. The appellate court decision in *Dahlke* has since been reversed by our court (36 Ill.2d 241).

We have repeatedly been called upon to construe the 1951 revision of the Revenue Act. (See, *e.g., Dahlke* v. *Hawthorne, Lane & Co.,* 36 Ill.2d 241; *Urban* v. *Lois, Inc.,* 29 Ill.2d 542; *Cherin* v. *The R. & C. Company,* 11 Ill.2d 447 and cases there cited.) In those cases we emphasized the profound change in the nature and consequences of tax-deed proceedings accomplished by the 1951 action of the General Assembly (*Cherin,* pp. 451-3; *Urban,* pp. 548-9; *Dahlke,* pp. 244-5) and that, unlike the pre-1951 procedure wherein

determination of compliance with statutory prerequisites for a tax deed was largely an administrative matter and the utmost in exacting observance of form was required to produce a valid tax title, the post-1951 statutory provisions provide for a judicial determination. Consonant with this change, section 266 of the Revenue Act (Ill. Rev. Stat. 1965, chap. 120, par. 747) provides: "Tax deeds issued pursuant to this section shall be incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. This section shall be liberally construed so that tax deeds herein provided for shall convey merchantable title." In accordance with these legislative expressions, we have consistently held that findings of the court before which the tax-deed proceedings are held pursuant to section 266 of the Act may not be collaterally attacked except as provided by section 72 of the Civil Practice Act (Ill. Rev. Stat. 1965, chap. 110, par. 72) which affords relief from final judgments, orders and decrees (*People ex rel. Wright* v. *Doe,* 26 Ill. 446, 451; *Southmoor Bank and Trust Co.* v. *Willis,* 15 Ill.2d 388, 394-5), and that relief thereunder is available upon proof of fraud. *Remer* v. *Interstate Bond Co.,* 21 Ill.2d 504.

The precise question, therefore, for determination here is whether the record before us establishes a *prima facie* case of fraud, for if it does the trial court's denial of the section 72 petition at the close of petitioner's proof was erroneous. If not, that action was proper.

It is clear that petitioner's failure to receive notice of the tax-deed proceeding does not, *per se,* entitle her to have the deed set aside. *(Dahlke.)* Nor does the fact that respondent's agent could have made more thorough inquiry and a more diligent search than he did necessarily establish fraud on the part of respondent in the absence of proof of wrongful intent or a pattern of deception. *(Dahlke.)*

The basic factual question here was whether Shapiro talked to Glenn Pettit, the contract purchaser, and was in-

formed by him that the owners now lived in California and that Pettit would reveal no further information. Shapiro so testified in the tax-deed proceedings. Pettit, in the section 72 proceedings denied that he talked to Shapiro, but other of his testimony was impeached and he may well have been biased by the fact that petitioner was also suing him. It is clear from the statements of the trial judge that he was skeptical of Pettit's truthfulness. If Shapiro was, as he testified, told by Pettit that the owners were living in California, his failure to make more thorough local search may be justifiable and scarcely constitutes evidence of fraud. Resolution of this factual conflict was for the trier of fact and his finding on this record that petitioner had failed to establish fraud cannot be said to be contrary to the manifest weight of the evidence.

The judgment of the Appellate Court for the First District is reversed. The judgment of the Cook County circuit court is affirmed.

*Appellate Court reversed; circuit court affirmed.*

Mr. Justice Kluczynski took no part in the consideration or decision of this case.