(No. 55771.—

*In re* APPLICATION OF THE COUNTY TREASURER OF COOK COUNTY (Central National Bank in Chicago, Appellant; Jocelyn Congua, Appellee).

*Opinion filed October 22, 1982.*

SIMON, J., specially concurring.

James A. Regas, of Regas & Frezados, of Chicago, for appellant.

Herbert Lesser, of Chicago, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Petitioner, Central National Bank, brought an action in the circuit court of Cook County under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) seeking to overturn a tax deed issued to respondent, Jocelyn Congua, to property to which petitioner had held legal title under a land trust. The circuit court granted petitioner's motion for summary judgment and ordered that the deed be vacated. A divided appellate court reversed (100 Ill. App. 3d 534), and we granted leave to appeal. The principal issue is whether negligence by the sheriff in serving notice of the tax-deed proceedings, as a result of which petitioner was not personally served, entitles petitioner to section 72 relief.

Under section 263 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 744) the purchaser at a tax sale must give notice of the sale and of the date of expiration of the redemption period not less than three months nor more than five months prior to the expiration of the redemption period. Section 263 requires that notice be served personally and by certified mail, return receipt requested, through the clerk of the circuit court. Unknown owners and interested parties may be given notice by publication. Prior to 1976, the tax purchaser was responsible for personally serving the property owner. In 1976, section 263 was amended to provide that "[t]he purchaser or assignee shall give the above notice by causing it to be

served by a sheriff \*\*\*." Ill. Rev. Stat. 1977, ch. 120, par. 744.

The circuit court in the tax-deed proceedings approved the method of personal service by the sheriff's office rather than by the tax purchaser, although the tax sale occurred prior to the effective date of the 1976 amendment. On appeal from the circuit court's decision on the section 72 petition, the appellate court held that although the 1976 amendment should not have been applied, the fact that the parties did not argue the issue and that the circuit court approved of the method of service bound the appellate court. (100 Ill. App. 3d 534, 538; relying on *In re Application of County Treasurer* (1974), 20 Ill. App. 3d 291.) Since the issue is not raised here we express no opinion upon it.

The property in question is a vacant lot in Cook County. It was sold to Interstate Bond Company in December 1975 for nonpayment of 1974 taxes. Central National Bank was the legal titleholder of the property under a land trust. Interstate Bond, after extending the redemption period to November 1978, filed its petition for deed in June 1978 and gave notice in July 1978, pursuant to section 263 of the Revenue Act. Notice was published on three consecutive days in the Chicago Law Bulletin; a copy of the notice was given to the circuit clerk, along with postage for certified mail, to be mailed by the clerk; and a copy was delivered to the sheriff's office, to be personally served upon Central National Bank. Prior to the hearing, Interstate Bond assigned its interest to Jocelyn Congua, the respondent here, who was substituted as petitioner for the tax deed.

At the hearing, Jocelyn Congua submitted an affidavit by an agent of Interstate Bond Company in which the affiant stated, *inter alia,* that he had caused the sheriff to serve notice upon Central National Bank. The court was shown a copy of the published notice, a return receipt

signed by petitioner, dated July 26, 1978, for a copy of the notice sent by the circuit clerk, and the sheriff's return, signed by Deputy Joseph Nodell, indicating that Central National Bank was personally served by the deputy at Central National Bank on July 12, 1978, service being made on "E. Sodergren," also spelled "E. Rodergren." The court found, pursuant to section 266 of the Revenue Act, that the notices required by law had been given, that the respondent had acted with diligence in attempting to serve the proper parties, and that the other requirements of the Act had been met. On November 15, 1978, the court ordered that the deed be issued.

On December 13, 1979, Central National Bank filed a petition under section 72 seeking to overturn the tax deed. It alleged that it had not had notice of the tax-deed proceedings and had learned of them in October 1979 through the beneficiary of the trust. It also alleged that it had no employee by the name of "E. Sodergren" or "E. Rodergren" and that this name was fraudulently written on the sheriff's return in order to avoid the statutory requirement of personal service. Subsequently, Deputy Joseph Nodell was deposed, and he testified that the notice which was supposed to be served on Central National Bank had gotten mixed up with some other papers and was mistakenly served upon Miss Sodergren, who worked at the Federal National Mortgage Association, where he had also served papers that day. Petitioner then filed a motion for summary judgment, again stating that it did not have notice of the proceedings, that the deputy's return and the respondent's affidavit which relied on it were false, and that the error in service was a "mistake *** made because of a mix-up in *** papers."

The circuit court vacated the order to issue the tax deed and declared the deed issued to Jocelyn Congua null and void. The court held that the combination of the deputy's error and the affiant's reliance on the return, which

resulted in his statement that he had caused the sheriff to serve Central National Bank, was "tantamount to fraud." The appellate court reversed, holding that neither the deputy's error nor respondent's reliance upon the return constituted fraud. That court also noted that since petitioner had actual notice of the proceeding in July 1978, as evinced by the return receipt, petitioner had not exercised due diligence in filing the section 72 petition nearly 17 months later.

The petitioner does not attempt to argue here that the deputy's error or the respondent's reliance upon it constitutes fraud as it has been defined by this court: "a wrongful intent—an act calculated to deceive." (*Dahlke v. Hawthorne, Lane & Co.* (1966), 36 Ill. 2d 241, 245; see also *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31; *Exline v. Weldon* (1974), 57 Ill. 2d 105; *Zeve v. Levy* (1967), 37 Ill. 2d 404.) We agree with petitioner's assessment, for there is no evidence of intentional deception on the part of either the deputy or the respondent. Petitioner asserts, however, that applying this strict definition of fraud here would tend to favor the merchantability of tax deeds over the equally important, albeit competing, goal of protecting the landowner accomplished by insistence upon strict compliance with the statutory conditions. "There is little doubt," says petitioner, "that a purchaser who failed to effect personal service, but who nevertheless filed an affidavit indicating to the court that such service had been made, would have perpetrated such deception and fraud upon the court that any order directing the issuance of a tax deed would be subject to attack on those grounds." The decisions of this court, however, do not support this statement. Without proof of fraud, proof that the owner did not actually receive notice, even if a statement had been made to the court that service was made, is not sufficient grounds to grant section 72 relief. (*Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 37; *Zeve v. Levy* (1967),

37 Ill. 2d 404, 409-10; *Urban v. Lois, Inc.* (1963), 29 Ill. 2d
542, 548.) Nor do we believe that a policy of favoring the
validity of tax deeds in a collateral proceeding in any way
undermines the trial court's obligation to insist upon strict
compliance with the statutory requirements. This was the
balance struck by the legislature in the 1951 revision of
the Revenue Act of 1939 and repeatedly confirmed by de-
cisions of this court.

Prior to 1951, increasing tax delinquencies were im-
periling essential governmental functions. (*Cherin v. R. &
C. Co.* (1957), 11 Ill. 2d 447, 452; *People v. Muscarello*
(1953), 350 Ill. App. 88, 92.) In part this was due to the
vulnerability of tax deeds, which, in the words of one com-
mentator, amounted to little more than a cloud on the title
of the delinquent owner. (Turano, *Equitable Relief, Collat-
eral Attack and the Illinois Tax Deed,* 51 Chi.-Kent L.
Rev. 725 (1975).) In order to return the properties to the
tax rolls and to provide greater stability for tax deeds, the
legislature substantially revised the Revenue Act in 1951.
(See Waldron, *Merchantable Title by Tax Deeds,* 44 Chi.
Bar Rec. 67 (1962); Note, 40 Chi.-Kent L. Rev. 155, 157
(1963).) Section 266 of the Act was amended to provide
that the circuit court, rather than the county clerk, would
determine whether the tax purchaser was entitled to the
deed. (See *Cherin v. R. & C. Co.* (1957), 11 Ill. 2d 447,
451-53.) It also provided that tax deeds would be "incon-
testable" except by direct appeal or as provided under
section 72 of the Civil Practice Act and that the Act "be
liberally construed so that tax deeds *** shall convey mer-
chantable title." Ill. Rev. Stat. 1951, ch. 120, par. 747.

Subsequently this court upheld the validity of tax-deed
proceedings in varying circumstances. In *Southmoor
Bank & Trust Co. v. Willis* (1958), 15 Ill. 2d 388, the
court denied section 72 relief where it was agreed that
delinquent taxes had in fact not been paid by the tax pur-
chaser, but the court in the tax-deed proceeding had found

that the tax purchaser had complied with all the provisions at law entitling it to a tax deed. This court held that section 72 "cannot be used to again put in issue questions previously adjudicated by valid means." (15 Ill. 2d 388, 395.) In *Remer v. Interstate Bond Co.* (1961), 21 Ill. 2d 504, the court held that, while findings of record were conclusive, the section 72 petitioner was entitled to a hearing on allegations of fraud, since those issues had not been asserted earlier. (21 Ill. 2d 504, 513-14.) In *Urban v. Lois, Inc.* (1963), 29 Ill. 2d 542, this court held that even though petitioner had not been personally served with notice, where no fraud was shown, the trial court's previous finding that all notice required by law had been given could not be collaterally attacked. (29 Ill. 2d 542, 548-50.) In *Dahlke v. Hawthorne, Lane & Co.* (1966), 36 Ill. 2d 241, the court noted that fraud implies "a wrongful intent—an act calculated to deceive" (36 Ill. 2d 241, 245) and was not established despite the fact that not all of the occupants of the property had been served with notice. In *Zeve v. Levy* (1967), 37 Ill. 2d 404, this court pointed out:

> "[P]etitioner's failure to receive notice of the tax-deed proceeding does not, *per se,* entitle her to have the deed set aside. (*Dahlke.*) Nor does the fact that respondent's agent could have made more thorough inquiry and a more diligent search than he did necessarily establish fraud on the part of respondent in the absence of proof of wrongful intent or a pattern of deception. (*Dahlke.*)" (37 Ill. 2d 404, 409.)

See also *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31; *Exline v. Weldon* (1974), 57 Ill. 2d 105.

In 1976, apparently in recognition of the potential for fraud, the legislature amended section 263 to provide that notice of the tax-deed proceedings be served by the sheriff. Although this provision seemingly reduced the possibility of fraud, it did not eliminate the risk of the negligent error that occurred here. We are not persuaded, however, that the legislature intended to allow such errors to be raised as de-

fenses in collateral proceedings. We note that the General Assembly deleted, in 1970, language added to section 266 in 1967 which had allowed a reviewing court to "consider defenses relating to questions of the notices required by section 263 ***." (Compare Ill. Rev. Stat. 1967, ch. 120, par. 747, with Ill. Rev. Stat. 1971, ch. 120, par. 747; see also *In re Application of County Collector* (1972), 7 Ill. App. 3d 124, 128-29.) We agree with the appellate court that this deletion indicates the legislature's intention to protect from collateral attack judgments on questions relating to notice. In light of the implication of this deletion, the legislature's expressed intent in section 266 that tax deeds be "incontestable," and the fact that the merchantability of tax titles would be impaired if errors by the sheriff in service of notice, without proof of fraud, were held to be sufficient grounds to afford section 72 relief, we adhere to our previous holdings that section 72 relief in tax-deed cases is limited to those cases where fraud is proved or the judgment is void.

This record does not sustain the trial court's finding that the tax-deed proceedings were "tantamount to fraud." The deputy's error was inadvertent; at most it was negligence. There is no contention that respondent knew of the error at the time of the tax-deed proceedings. The 1976 amendment requires the tax purchaser to deliver a copy of the notice to the sheriff for service upon the required persons. The amendment relieves the tax purchaser from the obligation and responsibility of serving the notice himself. Once he has complied with the provision by delivering a copy to the sheriff with the required fee, he has a right to rely upon the sheriff's return. Although petitioner had characterized the affidavit as "false" in stating that the sheriff had served petitioner, there is no evidence to support a finding of intentional deception which the term false connotes. (Webster's Third New International Dictionary 819 (1971); Ballentine's Law Dictionary 485 (1948).) We hold therefore that neither the error by the deputy in service of notice nor respondent's

reliance upon the sheriff's return establishes fraud in the tax-deed proceedings. Section 72 relief is therefore inappropriate.

Moreover, we also agree with the appellate court's view that petitioner did not proceed diligently in filing the section 72 petition. The bank had actual notice of the tax-deed hearing nearly four months before its occurrence. In *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467, this court stated:

> "[A] party may not avail himself of the remedy provided by section 72 'unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court. [Citations.] Such a motion or petition is not intended to relieve a party from the consequences of his own mistake or negligence.' (*Brockmeyer v. Duncan* [1960], 18 Ill. 2d 502, 505.)"

Accord, *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 310-11; *cf. Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 39-40; *Urban v. Lois, Inc.* (1963), 29 Ill. 2d 542, 549-50; *People v. Orth* (1961), 21 Ill. 2d 205, 211; *People v. O'Keefe* (1960), 18 Ill. 2d 386, 392-93.) Petitioner could have presented its defense to the trial court. It did not and has made no effort to show that this failure was not due to its own negligence. The petition should have been dismissed by the trial court.

The appellate court correctly reversed the trial court, dismissed the petition and entered judgment for respondent. Its judgment is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, specially concurring:

My concurrence in the result is because the bank as trustee received notice of the hearing by registered mail approximately four months before it took place. Having received this notice through its trustee, petitioner could have presented its defense to the trial court. For this reason I agree with the majority that the petitioner could have had

his day in court except for his own lack of diligence, and therefore he is ineligible for section 72 relief.

The majority appears, however, to be saying that even had the notice by registered mail not reached the bank, the property owner would have had no recourse unless he could establish actual fraud, that is, intentional deception, in the failure of the sheriff to make service. I do not agree with this approach, for it unilaterally exalts the rights of the pur-chaser at a tax sale above those of the delinquent property owner. That the majority reaches this result in the name of merchantability of tax titles does not, in my judgment, make it respectable.

The 1976 amendment to section 263 of the Revenue Act requiring that the property owner be served by the sheriff was a salutary measure designed to insure that property owners who had failed to pay taxes would not forfeit their property without knowing about it. Forfeiture for nonpayment of taxes is no less unpleasant, and in some cases no less tragic, to a property owner who loses his property without notice because of negligent errors of the sheriff's deputy, as a court finds happened here, than because of deceit on the part of the deputy.

I do not understand why the failure of the sheriff's deputy to make proper service in this case should not be treated in the same way as such a failure would be in any other case in which the sheriff fails to effect a service for which the law makes him responsible. Notwithstanding the General Assembly's deletion in 1970 of language in the Revenue Act permitting "defenses relating to questions of notices required by section 263," upon which the majority opinion seems to place strong emphasis (92 Ill. 2d at 408), section 72 is still left intact by the Revenue Act as a vehicle available to the property owner to raise questions of failure of service, as it is available to any other litigant claiming he had not received service. The historical note to section 266 of the Revenue Act indicates that the 1970 amendments to section 266

were "to clarify meaning where ambiguous." (Ill. Ann. Stat., ch. 120, par. 747, Historical Note, at 58 (Smith-Hurd Supp. 1981).) Thus, it does not appear that these amendments were intended to take challenges to notice out of the panoply of remedies available to property owners. It is likely that the legislature feared that the separate inclusion of challenges to notice in the statute would lead to questions as to whether section 72 was a vehicle for raising such challenges.

The cases on which the majority relies to support the proposition that the delinquent must show actual fraud to prevail even where he was not served with notice are not relevant. They did not involve service required to be made by the sheriff, as the 1976 amendment to section 263 commands. Rather, they involved services predating the 1976 amendment, which were then made by the tax purchaser instead of by the sheriff.

The sanctification the majority opinion gives to the handling of the notice by the sheriff opens the door for too many irregularities. There appears to be no adequate way of policing service by the sheriff such as, for example, in this very case where at best inexcusable confusion took place. Deputy Nodell acknowledges that he was guilty of gross negligence here—leaving the notice at the wrong place because he mixed it up with some other papers which he was serving at that place. I do not think that property owners, even those who have not paid their taxes, should be left at the mercy of this type of official oversight where apparently there was no internal check upon Deputy Nodell's performance which might have discovered it.

The intention of the 1976 amendment to section 263 was, I believe, to make it more certain that property owners would actually receive notice of a pending tax sale of their property, and to avoid abuses of the type which occurred when the law permitted the tax purchaser himself to serve notice on the property owner. The majority opinion, I fear, is

a step in the direction of repeating what unfortunately has occurred too often in the past—approving tax forfeitures about which the property owner first learns after it is too late. For that reason, I would regard the failure to effect proper service on the property owner as cognizable under section 72 had the notice not been received through the registered mail.