*In re* APPLICATION OF THE COUNTY TREASURER AND *EX OFFICIO* COUNTY COLLECTOR OF COOK COUNTY, ILLINOIS, FOR JUDGMENT AND ORDER OF SALE AGAINST REAL ESTATE RENDERED DELINQUENT FOR THE NONPAYMENT OF 1980 TAXES (Elisa Fredericks *et al.*, Petitioners-Appellees, v. Midwest Real Estate Investment Company, Respondent-Appellant).

First District (1st Division)   No. 1—87—0577

Opinion filed June 26, 1989.

David R. Gray, of Chicago, for appellant.

Jones, Ware & Grenard and Shaheen, Lundberg, Callahan & Orr, both of Chicago (Mitchell Ware, Frank M. Grenard, Alfred M. Swanson, Jr., David S. Allen, Saul R. Wexler, and George M. Pearce, of counsel), for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Respondent, Midwest Real Estate Investment Company (Midwest), seeks reversal of a judgment entered by the circuit court which vacates a previous order directing issuance of a tax deed. This appeal affects two condominium units located on the first floor at 5036-38 South Drexel Boulevard, Chicago, Illinois. On December 11, 1978, Robert and Grace Hsu, the original owners, recorded a condominium declaration with the recorder of deeds. The declaration included an attachment which provided a legal description of the property and the percentage of ownership assigned to each of the six condominium units located in the building. Unit 1 was listed as 5036-1st and unit 4 as 5038-1st. A plat of survey was also attached to the declaration which designated unit 1 as 5038 South Drexel and unit 4 as 5036 South Drexel. Subsequent to the recording of a condominium declaration, the county assessor voids the permanent real estate index number originally assigned to property and divides the property by matching the legal description of the units as specified in the declaration. The division of property is then sent to the county clerk's office, where a new permanent index number is created for the condominium units. Unit number 5036—1st was assigned the permanent index number of 20—11—113—029—1001 (PIN 1001), and unit number 5038-1st was assigned 20—11—113—029—1004 (PIN 1004).

On June 4, 1979, the owner filed an amended condominium declaration with the recorder of deeds with unit 1 listed as 5038 Drexel and unit 4 listed as 5036 Drexel. In November 1979, Theodore and Wanda Varnadoe, petitioners, obtained and recorded a warranty deed which listed the condominium unit they had purchased as 5036 South Drexel, unit 1. The Varnadoes entered into a mortgage contract with the First National Bank of Chicago, petitioner, who recorded the mortgage listing 5036 South Drexel, unit 1, as the address of the property mortgaged. Thereafter, the Varnadoes began living in the first floor unit of 5036 South Drexel which they believed they had purchased.

On October 6, 1980, Elisa Fredericks, petitioner, began living in unit 4 of 5038 South Drexel after obtaining and recording the warranty deed for that unit. There was confusion in the issuance of the warranty deeds because the Varnadoes thought they had purchased the first-floor unit they occupied at 5036 South Drexel but actually owned the first floor unit at 5038 South Drexel. Moreover, Ms. Fredericks occupied the first-floor unit at 5038 South Drexel but actually owned the first-floor unit at 5036 South Drexel.

Since their closings, the Varnadoes have paid their taxes through the First National Bank of Chicago, and Ms. Fredericks has paid her taxes through Talman Home Mortgage Corporation. There was a double payment of taxes for the property located at 5036 South Drexel PIN 1001, and no taxes paid since 1980 for the property located at 5038 South Drexel PIN 1004.

On April 20, 1982, Midwest purchased PIN 1004 for the delinquent 1980 taxes. On June 8, 1984, Midwest filed a petition for a tax deed naming the Varnadoes as the respondents. Thereafter, on November 9, 1984, Midwest filed an application for an order directing the county clerk to issue a tax deed for PIN 1004. The circuit court entered an order on December 21, 1984, directing the county clerk to extend the period of redemption to April 19, 1985, and granted Midwest leave to file an amended petition for tax deed. Subsequently, on December 21, 1984, Midwest filed an amended petition for tax deed naming the Varnadoes, Ms. Fredericks and the First National Bank as respondents.

All notices required by the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 482 *et seq.*) had been sent to both the Varnadoes and Ms. Fredericks at the 5038 South Drexel address. On April 23, 1985, Midwest filed an application for an order directing the county clerk to issue a tax deed. On October 10, 1985, after conducting a hearing, the trial court entered an order directing the county clerk

to issue a tax deed. The petitioners did not redeem from the sale of the property nor did they appear at the hearing to defend against the issuance of the tax deed.

On March 10, 1986, Midwest filed a petition for eviction. In response, Ms. Fredericks, and subsequently the First National Bank and the Varnadoes, filed section 2—1401 (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401) petitions to vacate the order directing issuance of a tax deed. A hearing on the section 2—1401 petitions was held on October 22, 1986. On January 26, 1987, the circuit court vacated its October 10, 1985, order concluding that the tax deed should be set aside to prevent injustice and that Midwest had committed fraud while obtaining the tax deed. Midwest appealed that order.

Midwest contends that the trial court erred in granting the petitioners' section 2—1401 petitions to vacate the order, directing issuance of a tax deed, since it complied with the requirement of section 266 of the Revenue Act (Ill. Rev. Stat. 1985, ch. 120, par. 747), and the petitioners failed to establish a meritorious defense to the issuance of the tax deed. Midwest further contends that the court's finding that Midwest committed fraud is against the manifest weight of the evidence.

■ The legislative intent of section 266 of the Revenue Act of 1939, which provides that tax deeds are incontestable except by direct appeal or by a section 2—1401 petition, identifies a strong policy favoring the merchantability of tax deeds in collateral cases once they have been issued. (*In re Application of County Treasurer & Ex Officio County Collector* (1987), 171 Ill. App. 3d 644, 648, 525 N.E.2d 852; *In re Application of County Treasurer* (1982), 92 Ill. 2d 400, 406, 442 N.E.2d 216.) However, there is a well-established competing policy favoring the liberal construction of a property owner's right to redeem where there would be no injury to the tax purchaser. (*In re Application of County Treasurer*, 171 Ill. App. 3d at 648; *In re Application of Rosewell* (1986), 148 Ill. App. 3d 297, 303, 498 N.E.2d 790; *Franzen v. Donichy* (1956), 9 Ill. 2d 382, 387, 137 N.E.2d 825, 828.) A tax purchaser is not injured by the failure to get a deed since the amount the purchaser paid for the property is recovered from the county. *Rosewell*, 148 Ill. App. 3d at 303; *In re Application of County Treasurer* (1973), 16 Ill. App. 3d 385, 389, 306 N.E.2d 743, 747.

■ Illinois courts have held that where a property owner petitions to vacate a judgment granting a tax deed under section 2—1401, the owner must prove fraud, and absent fraud, the tax deeds issued are incontestable except on direct appeal. (*In re Application*

*of County Treasurer* (1982), 92 Ill. 2d 400, 408, 442 N.E.2d 216; *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 36, 344 N.E.2d 468; *In re Application of County Treasurer & Ex Officio County Collector* (1987), 171 Ill. App. 3d 644, 648, 525 N.E.2d 852; Ill. Rev. Stat. 1985, ch. 120, par. 747.) "Fraud" is defined as "a wrongful intent—an act calculated to deceive." (*In re Application of County Treasurer*, 92 Ill. 2d at 405, 442 N.E.2d at 218; *Dahlke v. Hawthorne, Lane & Co.* (1966), 36 Ill. 2d 241, 245, 222 N.E.2d 465, 467.) However, our courts have also determined that an allegation of fraud is not always required when reviewing a property owner's right to redeem. See *In re Application of County Treasurer* (1980), 84 Ill. App. 3d 506, 511-12, 405 N.E.2d 869.

■ Although in the present case there are facts in the record to support the trial court's finding of fraud, a reviewing court is not required to accept the trial court's reasoning for its judgment (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9), and the trial court's judgment may be sustained by the reviewing court on any grounds supported by the record. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502, 520 N.E.2d 37; *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384.

The purpose of a petition for relief under section 2—1401 of the Code of Civil Procedure, formerly section 72 of the Civil Practice Act, is to bring factual matters before the trial court not appearing in the record which, if the court had known at the time judgment was rendered, would have prevented its rendition. (*Aroonsakul v. Flanagan* (1987), 155 Ill. App. 3d 223, 227, 507 N.E.2d 1, *appeal denied* (1987), 116 Ill. 2d 547, 515 N.E.2d 100; *Taxman v. Health & Hospital Governing Comm'n* (1980), 83 Ill. App. 3d 499, 501, 404 N.E.2d 419.) In the present case, the circuit court acknowledged that it would not have issued the tax deed if it had known of the mistakes in the title, occupancy and public records. Where unfair, unjust or unconscionable circumstances are present, justice may require the court to invoke its equitable power to vacate a default judgment to prevent such circumstances under a section 2—1401 petition. *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 225, 499 N.E.2d 1381; *In re Application of County Treasurer* (1980), 84 Ill. App. 3d 506, 509, 405 N.E.2d 869.

■ The petitioners are entitled to relief pursuant to section 2—1401 of the Code of Civil Procedure if they affirmatively set forth factual allegations which support: "(1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim

to the circuit court in the original action; and (3) due diligence in filing the section 2—1401 petition for relief." (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221, 499 N.E.2d 1381.) Although due diligence required petitioner to have a reasonable excuse for failing to act within the designated time (114 Ill. 2d at 222), when applying equitable principles, courts are not strictly bound by precedent where justice and good conscience require the vacatur of a default judgment even though the due diligence requirement has not been met. (114 Ill. 2d at 225; *American Consulting Association, Inc. v. Spencer* (1981), 100 Ill. App. 3d 917, 923, 427 N.E.2d 579, *cert. denied* (1982), 458 U.S. 1112, 73 L. Ed. 2d 1375, 102 S. Ct. 3495; *Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1019, 329 N.E.2d 376.) It is within the sound discretion of the circuit court based upon the facts and equities presented whether a section 2—1401 petition should be granted, and a court of review will not disturb those findings unless there has been an abuse of discretion. *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221, 499 N.E.2d 1381.

A party relying on section 2—1401 is also entitled to relief if he can show that he failed to defend against a lawsuit due to an excusable mistake, and that under the circumstances he acted reasonably, and not negligently, when he failed to initially defend against the judgment. 114 Ill. 2d at 222; *American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 643, 400 N.E.2d 102.

█ Our courts have held that a meritorious defense exists where owners have attempted to redeem their property and were precluded from redemption due to error by the county clerk's office. (See *In re Application of County Treasurer & Ex Officio County Collector* (1987), 171 Ill. App. 3d 644, 650, 525 N.E.2d 852; *In re Application of County Treasurer* (1980), 84 Ill. App. 3d 506, 509-10, 405 N.E.2d 869.) Moreover, the United States Supreme Court has held that the right to redeem is a substantial right, and a court of equity has a duty to intervene when the exercise of that right is prevented as a result of official mistake. *Martin v. Barbour* (1891), 140 U.S. 634, 646, 35 L. Ed. 546, 550, 11 S. Ct. 944, 949; *In re Application of Rosewell* (1986), 148 Ill. App. 3d 297, 303, 498 N.E.2d 790.

█ In the case at bar, both the meritorious defense and due diligence requirements were met. The record reveals that the original owners filed a condominium declaration with the recorder of deeds on December 11, 1978, which listed unit 1 as 5036-1st and unit 4 as 5038-1st. A plat of survey was attached to the declaration designating unit 1 as 5038 South Drexel and unit 4 as 5036 South Drexel. In order to reconcile this discrepancy, on June 4, 1979, the owners filed

an amended condominium declaration listing unit 1 as 5038 South Drexel and unit 4 as 5036 South Drexel. It is the responsibility of the county clerk to list subdivided property that has not been listed by the proper description (Ill. Rev. Stat. 1985, ch. 120, par. 513), and it is the county assessor's duty to correct the descriptions upon receipt of the lists from the county clerk's office. Ill. Rev. Stat. 1985, ch. 120, par. 523.

A representative from the county assessor's office testified that the county assessor's office did not receive a copy of the 1979 amended condominium declaration until 1986. He further testified that the property descriptions and permanent index numbers would have been reassigned for the 1980 tax year if the county assessor's office had received a copy of the amended condominium declaration. This reassignment would have affected the payment of taxes since taxes are paid by permanent index numbers. Consequently, both the county clerk and the county assessor failed to meet their statutory duties, resulting in an improper listing of the units for purposes of taxation due to their failure to revise the permanent index numbers and unit descriptions consistent with the amended condominium declaration. Moreover, when Mr. Vernadoe received notice of the tax deed proceeding, he forwarded the notice to the First National Bank, which compared the notice and the legal description of the Varnadoes' property to the Sidwell map which established that the PIN 1004 was assigned to unit 5038-1st. The bank further verified this information by reexamining the Sidwell map in the county clerk's office, where an employee of the county clerk's office informed the bank that the property subject to the tax sale was not the property on which the bank held a mortgage. He further mistakenly informed the bank that the Varnadoes "shouldn't worry about the notices because the notices were not for their unit."

The right of redemption is a substantial right and that right should not be lost due to mistake or misrepresentation. (*In re Application of Rosewell* (1986), 148 Ill. App. 3d 297, 303-04, 498 N.E.2d 790; *Van Fleet v. Van Fleet* (1984), 126 Ill. App. 3d 448, 453, 467 N.E.2d 592, 596.) Based on the foregoing, we conclude that the petitioners in good faith attempted to pay their taxes but were precluded from paying their taxes to the proper permanent index number as a result of mistakes by county officials. The petitioners were entitled to equitable relief based on the mistake of the county clerk and the county assessor's office. *In re Application of County Treasurer & Ex Officio County Collector* (1987), 171 Ill. App. 3d 644, 647, 525 N.E.2d 852.

■■ Our courts have further held that the equitable powers of the court may be exercised to allow redemption after the period to redeem has expired where redemption may have been prevented as a result of mistake by the public official or by the purchaser. (*In re Application of Rosewell*, 148 Ill. App. 3d at 304; *Mutual Life Insurance Co. v. Chambers* (1980), 88 Ill. App. 3d 952, 957, 410 N.E.2d 962, 966.) Therefore, notwithstanding the errors committed by the county officials, the petitioners are also entitled to equitable relief as a result of their own excusable mistakes in purchasing the property and paying the property taxes.

The record reveals that the original owners informed the Varnadoes that they were purchasing 5036 South Drexel unit 1 and their recorded warranty deed also listed the property they purchased as 5036 South Drexel unit 1. Moreover, Ms. Fredericks testified that she believed that she owned the unit which she occupied, which was listed in her warranty deed as 5038 South Drexel unit 4. In spite of these mistaken actions and beliefs, in actuality, the Varnadoes owned the unit occupied by Ms. Fredericks, and Ms. Fredericks owned the unit occupied by the Varnadoes.

Neither the Varnadoes nor Ms. Fredericks were negligent in their failure to respond to the notices of the tax deed proceedings. On the contrary, they believed in good faith that they were paying their property taxes when the payment of the taxes was made through their respective mortgagees, the First National Bank of Chicago and Talman Home Corporation. Although only three of the four tax installments were paid for 1980, it is not clear from the record whether the taxes were actually paid for the property located at 5036-1st or 5038-1st South Drexel.

In reliance on: (1) the representations from the county clerk's office that the property sold for delinquent taxes was not the property owned by the Varnadoes; (2) the bank's belief that it had mortgaged property located at 5036 South Drexel; (3) the notice which described the delinquent tax property as 5038 South Drexel; and (4) the petitioners' belief that the taxes on the respective units had been paid, the petitioners in good faith did not attend the hearing to defend against the issuance of the tax deed.

The right of a property owner to redeem is superior to the right of a purchaser to get a tax deed. (*In re Application of Rosewell* (1986), 148 Ill. App. 3d 297, 303, 498 N.E.2d 790; *In re Application of Du Page County Collector* (1981), 98 Ill. App. 3d 950, 952, 424 N.E.2d 1204, 1207.) In light of the circumstances, we conclude that the trial court did not abuse its discretion in granting the section 2—

1401 petitions. Instead, the trial court properly invoked its equitable power to insure fairness and justice. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and QUINLAN, JJ., concur.