**2021 IL 126150**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126150)

*In re* APPLICATION FOR A TAX DEED (SI Resources, LLC, *et al.*, Appellants, v. Opal Castleman *et al.*, Appellees).

*Opinion filed June 17, 2021.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, and Neville concurred in the judgment and opinion.

Justice Michael J. Burke specially concurred, with opinion.

Justice Overstreet took no part in the decision.

**OPINION**

¶ 1    The appellants, SI Resources, LLC, and Cadijah Brown, filed a two-count motion to void a tax deed because it was not issued and recorded within one year after the expiration of the statutory redemption period following the tax sale, as required by section 22-85 of the Property Tax Code (35 ILCS 200/22-85 (West

2014)). The respondents, Stephen and Oral Castleman and William and Vicki Groome, filed a motion to dismiss that was granted by the trial court. The appellate court affirmed the dismissal order. 2020 IL App (5th) 190168, ¶ 39. The issues before this court implicate the application of section 22-85 to the facts of this case. We affirm the appellant court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        According to the records of the Hamilton County treasurer, L.I. Brown Jr. was the last known person assessed for real estate taxes owed on certain mineral rights from land located in that county. After he died without a will in 1981, his only living blood relatives, siblings Cadijah Brown, Ross Brown, and Kevin Brown, became the owners of those mineral rights. The 2011 real estate taxes on those mineral rights were not paid.

¶ 4        On January 28, 2013, the Hamilton County collector sold the delinquent taxes on the mineral rights to Kathy Riley, who received a tax sale certificate. On June 1, 2015, Riley assigned that certificate to Stephen and Opal Castleman (together, Castleman). Shortly after that, Castleman extended the taxes' redemption date to October 10, 2015, and filed a petition for a tax deed in the Hamilton County circuit court on June 22, 2015. That court entered an order pursuant to section 22-40(a) of the Property Tax Code (35 ILCS 200/22-40(a) (West 2014)) on October 19, 2015, directing the Hamilton County clerk to issue a tax deed to Castleman. Thereafter, Castleman assigned the tax sale certificate to William and Vickie Groome (together, Groome), and the Brown siblings sold the mineral rights to SI Resources, delivering it a quitclaim deed in October 2015.

¶ 5        On November 12, 2015, SI Resources filed a postjudgment motion pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2014)) to vacate the section 22-40(a) order. Cadijah Brown joined that motion. Castleman responded with a motion to dismiss the section 2-1203 motion to vacate, and the trial court granted the dismissal motion, finding that SI Resources and Brown lacked standing to file the motion to vacate. SI Resources and Brown (together, SI) appealed from the dismissal of their joint motion.

¶ 6 During the pendency of that appeal, Groome recorded a tax deed on February 29, 2016. Attached to the 2016 deed was an undated assignment of the tax sale certificate, indicating it was assigned to Groome on or before February 29, 2016. During oral arguments on the dismissal of SI's section 2-1203 joint motion to vacate, the appellate panel questioned whether a writ of *mandamus* was the proper means of compelling a public official to act when a county clerk had issued a tax deed in error.

¶ 7 Apparently inspired by that appellate court discussion, SI filed a complaint for writ of *mandamus* in the Hamilton County circuit court against the Hamilton County clerk in June 2017, while the appeal from the dismissal of its section 2-1203 motion was still pending. During the *mandamus* proceedings, the Hamilton County clerk conceded that the 2016 deed issued to Groome did not comport with the underlying section 22-40(a) order, which directed the deed to be issued to Castleman. Accordingly, that court entered an "Agreed Judgment Order" granting SI's request for a writ of *mandamus*. Castleman and Groome were not parties in the *mandamus* proceedings and did not challenge the validity of SI's *mandamus* action or the order entered by that court, although both admitted to having knowledge of the action and order.

¶ 8 Meanwhile, SI's appeal from the dismissal of the section 2-1203 motion to vacate the section 22-40(a) order continued. The appellate court focused on the language in section 2-1203 that permitted " 'any party ***, within 30 days after the entry of the judgment *** [to] file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.' *** 735 ILCS 5/2-1203(a) (West 2014)." *In re Application for a Tax Deed*, 2017 IL App (5th) 160230-U, ¶ 13. Concluding that the section 2-1203 motion was " 'a nullity' " because SI Resources was not a "party" within the meaning of that section and Brown's filing was untimely, the appellate court dismissed the appeal for lack of jurisdiction in August 2017. *Id.* ¶¶ 13-14 (quoting *In re Application for a Tax Deed*, 2016 IL App (5th) 150517, ¶ 8). The Hamilton County clerk subsequently issued Castleman a "Corrective Tax Deed" on October 27, 2017, in compliance with the original section 22-40(a) order.

¶ 9 A few days before the 2017 deed was issued, SI filed a two-count petition with the Hamilton County circuit court clerk. Count I was labeled as a "Section 22-85

- 3 -

Motion to Void Tax Deed" and included a claim to have the deed voided pursuant to section 22-85 of the Property Tax Code (35 ILCS 200/22-85 (West 2016)). Count II, labeled a "[Section] 2-1401/22-45 Petition to Vacate the October 18, 2015 Order Directing Issuance of Tax Deed," alternatively sought to vacate the section 22-40(a) order underlying that deed pursuant to section 22-45 of the Property Tax Code (*id.* § 22-45). SI successfully moved for leave to amend the petition and to join Groome as a necessary party.

¶ 10    Respondents Castleman and Groome filed a combined section 2-615 motion to dismiss count I (735 ILCS 5/2-615 (West 2016)) and section 2-619 motion to dismiss count II (*id.* § 2-619). They argued that count I should be dismissed for failing to state a claim because section 22-85 permitted *either* (but not both) the tax sale purchaser or an assignee of a tax sale certificate (here, Groome *or* Castleman) to obtain and record the tax deed and tolled the time to record the tax deed. SI did not enter a procedural challenge to the respondents' petition.

¶ 11    The trial court treated both counts of SI's amended petition as a section 2-1401 petition (see *id.* § 2-1401) and dismissed count I pursuant to section 2-615 and count II pursuant to section 2-619 on September 24, 2018. A month later, SI filed a motion to reconsider the dismissal of count I, arguing that the 2017 tax deed was void under section 22-85 because the certificate holder (Groome) did not obtain and record the tax deed within one year after expiration of the redemption period on October 10, 2015. After the trial court denied SI's motion to reconsider, SI filed a timely notice of appeal. That appeal is the basis for the issues currently before this court.

¶ 12    In the appellate court, SI asserted that the clock for the one year to obtain and record the tax deed started running on October 10, 2015, at the expiration of the redemption period. Because the 2017 tax deed was issued to Castleman on October 27, 2017, well after the one-year time limit, SI claimed it was automatically void under the plain language of section 22-85. SI also noted that the Hamilton County clerk conceded error in issuing the 2016 tax deed to Groome during the 2017 *mandamus* case.

¶ 13    In response, the respondents argued that section 22-40 used a conjunctive "or" that permitted either Castleman or Groome, as the purchaser and the assignee, to obtain and record the tax deed. They maintained that argument despite the section

22-40(a) order directing the county clerk to issue the tax deed to Castleman because they noted that Castleman had transferred the tax sale certificate to Groome. The respondents also asserted that the court's *mandamus* order and the subsequently issued 2017 "corrective" tax deed were invalid because that court lacked subject-matter jurisdiction over the 2016 deed.

¶ 14    In June 2020, the appellate court affirmed the dismissal of count I of SI's amended petition seeking to void the tax deed under section 22-85. That court initially concluded that a section 22-85 motion was not a legally cognizable means of collaterally attacking a tax deed. 2020 IL App (5th) 190168, ¶ 26. Even if the court treated count I as a section 2-1401(f) petition to void the tax deed under section 22-85, section 22-45 limits that challenge to four grounds, none of which was alleged here. *Id.* After entry of the appellate court's adverse decision, SI filed a petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2019) that was allowed by this court.

¶ 15                                II. ANALYSIS

¶ 16    Before this court, SI offers arguments on two primary issues: (1) whether the appellate court erred by finding SI's amended count I, seeking to void the 2017 tax deed issued to Castleman pursuant to section 22-85 of the Property Tax Code, failed to state a claim on which relief could be granted and (2) whether SI's section 22-85 claim in its amended pleading constituted a valid declaratory judgment action. We address each issue in turn.

¶ 17    Although SI filed a two-count amended pleading, before this court it disputes only the dismissal of count I pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)). A ruling on a section 2-615 motion to dismiss is reviewed *de novo* because it challenges the legal sufficiency of a pleading. On appeal, the reviewing court must accept all well-pleaded facts in the pleading as well as any reasonable inferences arising from them. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. The court is tasked with determining whether the pleading's allegations, when viewed in the light most favorable to the nonmovant, state a cause of action upon which relief may be granted. To grant a section 2-615 motion to dismiss, the pleadings must clearly show that the plaintiff would not be entitled to recover under any possible set of

- 5 -

facts. *Id.* To the extent that the parties' arguments require this court to construe the relevant statutes, we also conduct that review *de novo. 1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21.

¶ 18        SI first argues that the appellate court misconstrued section 22-85 by concluding that count I's attempt to void the 2017 tax deed was a procedurally insufficient collateral attack. SI adds that the appellate court's view effectively invalidates the language in section 22-85 limiting the time for obtaining and recording a tax deed. We disagree.

¶ 19        Section 22-85 states:

"Unless the holder of the certificate purchased at any tax sale under this Code takes out the deed in the time provided by law, and records the same within one year from and after the time for redemption expires, the certificate or deed, and the sale on which it is based, shall, after the expiration of the one year period, be absolutely void with no right to reimbursement." 35 ILCS 200/22-85 (West 2016).

SI contends that the provision's plain language creates a self-executing consequence when a tax deed is recorded more than one year after the expiration of the redemption period: the tax sale certificate, tax deed, and underlying tax sale are all automatically void with no right to reimbursement.

¶ 20        As SI points out, a challenge to a section 22-40(a) order directing a county clerk to issue a tax deed when presented with a certificate of tax purchase is distinct from a challenge to either the actual certificate or tax deed. SI claims that the appellate court erred by construing count I as a collateral attack on the trial court's section 22-40(a) order directing the issuance of a tax deed to Castleman when it was, in fact, a direct attack on that 2017 tax deed. In SI's view, the 2017 deed should not have been issued on October 27, 2017, because that date was more than one year after the expiration of the October 10, 2015, redemption period. Because section 22-85 states that any tax deed issued after that one-year period is automatically void, the court must recognize that the 2017 deed obtained by Castleman is void.

- 6 -

¶ 21        Our review of SI's amended pleading reveals that its allegations are not entirely consistent with that argument. Consistent with that argument, paragraph 11 of SI's amended pleading asserts that

> "SI and Brown's Count I Motion to Void the Tax Deed pursuant to Section 22-85 of the [Property Tax Code] *is an attack to void the Tax Deed, not vacate the order*. This legal distinction was previously recognized by the Court in *In re Application of the County Treasurer (Jerome Sirt v. GB Property Management)*, 333 Ill. App. 3d 355, 775 N.E.2d 86 (1st Dist. 2002); *In re County Treasurer (MB Financial Bank v. CCPI, LLC)*, 2012 IL App (1st) 101976 (hereinafter *MB Financial*)*; In re Application of the County Treasurer (John Zajicek, d/b/a Z Financial v. Lloyd Giordano)*, 2014 IL App (2d) 130995." (Emphasis added.)

The introduction to that same pleading, however, states that SI was moving the trial court "*to vacate the October 19, 2015 order* directing the Hamilton County Clerk to Issue a Tax Deed to Stephen R. and /or Opal Castleman (Castleman) *pursuant to 35 ILCS 200/22-85* and pursuant to 735 ILCS 5/2-1401 and 35 ILCS 200/22-45, Illinois Case Law, and this Court's judicial authority." (Emphases added.)

¶ 22        In addition, the pleading's statement of relief requested by SI conflicts with its claim before this court. At the end of the introduction, the pleading states, "*The tax deed is void* pursuant to Section 22-85 *** *and the October 19, 2015 order* directing the Clerk to issue a tax deed to Castleman *** *must be vacated* pursuant to section 22-45(3) and (4) of the [Property Tax Code]." (Emphases added.) Finally, in the pleading's last statement of SI's request for relief, SI again asserts that "*[t]he order directing the issuance of a tax deed to Castleman must be vacated* pursuant to Section 22-45(3) and (4) of the [Property Tax Code]. 35 ILCS 200/22-45(3) and (4); 35 ILCS 200/22-10 through 22-40(a)." (Emphasis added.)

¶ 23        We begin our review of SI's argument by looking past the conflicting assertions of count I, regarding them as attempts at relief that appear to have conflated count I's request to vacate the 2017 tax deed with count II's request to vacate the underlying October 2015 section 22-40(a) order. Instead, we first examine whether SI's count I allegations sufficiently established a violation of section 22-85 to avoid dismissal. If they do not, the appellate court properly affirmed the trial court's order dismissing count I.

¶ 24　　　Count I alleges that Castleman obtained an order in the Hamilton County circuit court directing the clerk of that county to issue a tax deed to Castleman in October 2015. That date is well within the one-year postredemption period ending in October 2016 mandated by section 22-85. The pleading asserts that, although Castleman obtained a timely order for issuance of a tax deed, he did not initially obtain that deed. Instead, Groome was "erroneously" issued the tax deed in February 2016. The 2016 deed was later "corrected" to show it was issued to Castleman after SI successfully prosecuted a separate action. That action sought a writ of *mandamus* "to compel Defendant, in her official capacity as the Hamilton County Clerk, to perform her non-discretionary statutory duty *to reform the Tax Deed* recorded \*\*\*, *issued to [Groome], to correctly issue said tax deed to [Castleman]* pursuant to the express direction of the Hamilton County Circuit Court's October 19, 2015 Order." (Emphases added.) In count I, SI also alleges that the "Clerk issued a tax deed to Castleman \*\*\* *correcting the void tax deed*." (Emphasis added.) Count I then concludes by alleging that, "as a matter of law, a valid tax deed was not taken out and recorded in the time provided by law" because the 2017 deed to Castleman was not recorded until October 2017, well after the October 2016 deadline.

¶ 25　　　SI does not deny that the tax deed "erroneously" issued to Groome and recorded in February 2016 was issued within section 22-85's one-year postredemption period. Indeed, SI implicitly relied on that deed being timely issued when it successfully maintained its *mandamus* action, compelling the Hamilton County clerk to issue a "corrective" deed to Castleman, consistent with the trial court's 2015 section 22-40(a) order.

¶ 26　　　SI's *mandamus* action highlights the source of the problem that truly lies at the heart of this appeal. That problem is not, as SI contends, the timely issuance and recording of a tax deed before the expiration of section 22-85's one-year postredemption period in October 2016. A tax deed was indisputably issued and recorded within that mandatory time limit. The critical problem is the deed's failure to name the proper party as the recipient, creating a direct conflict between the deed and the trial court's 2015 section 22-40(a) order. The former is an issue that may be deemed to trigger section 22-85, resulting in the tax deed becoming "absolutely void with no right to reimbursement" (35 ILCS 200/22-85 (West 2016)), as SI asserts. The latter is not.

¶ 27    As the respondents contend, the court's *mandamus* order is properly viewed as reforming and correcting the 2016 tax deed issued to Groome to comport with the 2015 section 22-40(a) order directing the deed to be issued to Castleman. Indeed, that is precisely the remedy SI expressly pursued in its *mandamus* action. Its *mandamus* complaint specifically sought to compel the Hamilton County clerk "*to reform the Tax Deed* recorded \*\*\*, *issued to [Groome], to correctly issue said tax deed to [Castleman]* pursuant to the express direction of the [2015 section 22-40(a)] order." (Emphases added.) The *mandamus* action did not seek to void the 2016 tax deed. SI's amended count I also expressly recognized the fact that the 2017 tax deed issued to Castleman was "correcting" the 2016 tax deed obtained by Groome.

¶ 28    Moreover, section 22-85 declares that the tax certificate, the tax deed, and the sale underlying them are all "absolutely void with no right to reimbursement" if "the holder of the certificate purchased" does not obtain a tax deed and record it "within one year from and after the time for redemption expires." *Id.* Here, "the holder of the certificate" at the time the 2016 tax deed was issued was Groome. The problem with issuing that deed to Groome was that it conflicted with the trial court's 2015 section 22-40(a) order directing the deed to be issued to Castleman, who was the certificate holder at the time of the 2015 order. The clerk erroneously issued the deed to Groome when presented with proof of Castleman's valid assignment of the tax certificate to Groome. To "correct" the erroneous issuance and recording of the 2016 deed to Groome, the Hamilton County clerk ultimately issued a "corrective" deed to Castleman in 2017 in accordance with the *mandamus* order obtained by SI.

¶ 29    Although SI now asserts that the 2016 deed was "void," that assertion is unsupported by its *mandamus* complaint, the *mandamus* court order, the "corrective" 2017 deed, and the applicable law. "A void order or judgment is, generally, one entered by a court without jurisdiction of the subject matter or the parties, or by a court that lacks the inherent power to make or enter the order involved." *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379-80 (2005); see also *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002) (stating " '[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally' " (quoting *Barnard v. Michael*, 392 Ill. 130,

135 (1945))). Applying those principles here, the Hamilton County clerk's act of issuing the 2016 tax deed to Groome, while undoubtedly erroneous, did not create a "void" deed. The trial court's 2015 section 22-40(a) order directed the clerk to issue a tax deed, giving the clerk the authority necessary to issue a deed. The clerk erred, however, by issuing the deed to the wrong person. That error did not, however, undermine the clerk's ability to issue a tax deed pursuant to the Property Tax Code. Indeed, it is quite telling that SI's complaint seeking a writ of *mandamus* to compel the clerk to correct the naming error by issuing the deed to Castleman never asserted that the 2016 deed was automatically void pursuant to section 22-85, nor did it request that court to find that the 2016 deed was void for any reason.

¶ 30        Although SI's amended count I allegation at times characterized the 2016 tax deed as "void," that characterization is legally incorrect. A void deed could not have been "corrected" by the issuance of the 2017 deed, the very relief SI requested and obtained in the *mandamus* court. The 2017 deed arose from the *mandamus* court's order compelling the clerk "to perform her non-discretionary statutory duty *to reform* the Tax Deed" issued to Groome to comport with the trial court's 2015 section 22-40(a) order by reissuing it to Castleman. That language also supports the conclusion that the 2017 deed was a corrected or reformed version of the 2016 deed and was not an entirely new document, as would have been the case if the 2016 deed were void and necessarily without any legal effect.

¶ 31        Because the 2017 tax deed issued to Castleman constituted a correction to the 2016 deed that the clerk erroneously issued to Groome, the corrected deed was rooted in the 2016 deed that was obtained and recorded on February 29, 2016. In this instance, we deem the *mandamus* order to be the equivalent of a *nunc pro tunc* order directing the county clerk to issue a reformed tax deed to correct the clerk's error in issuing the 2016 deed to Groome. See *People v. Melchor*, 226 Ill. 2d 24, 32-33 (2007) (explaining that "the use of *nunc pro tunc* orders or judgments is limited to incorporating into the record something which was actually previously done by the court but inadvertently omitted by clerical error. It may not be used for supplying omitted judicial action, or correcting judicial errors under the pretense of correcting clerical errors."). That conclusion is consistent with the reasoning applied by our appellate court in other tax deed cases. In *In re Application of the Cook County Collector*, 228 Ill. App. 3d 719, 732 (1991), the court recognized that, generally, the result of the erroneous use of authority is not void. More specifically,

that court concluded that a county clerk's failure to adhere to all statutory requirements preceding the issuance of a tax deed and subsequent issuance of a tax deed possessing inaccurate information does not make the deed void. As the appellate court explained:

> "Even though the court exceeded its authority by erroneously entering a default judgment against a defendant who had answered the complaint, the judgment was held not void in *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 480-81, 378 N.E.2d 1130. Where it was not beyond dispute that an order was in violation of the applicable statutory provisions, the order was held not void in *People v. Holum* (1988), 166 Ill. App. 3d 658, 660-61, 520 N.E.2d 419. Although a tax deed order had not been entered by a court clerk as required, it was held not void in *Landis v. Miles Homes, Inc.* (1971), 1 Ill. App. 3d 331, 335, 273 N.E.2d 153. An incorrect property description did not render a judgment for the issuance of a tax deed void in *Elliott v. Johnson* (1987), 156 Ill. App. 3d 70, 74, 508 N.E.2d 1229." *Id.*

Here, the issuance of a valid tax deed was properly ordered by the trial court in 2015 when it directed the Hamilton County clerk to issue the deed to Castleman. If that order had been properly carried out, the 2016 tax deed would not have been erroneously issued to Groome. As in a different context involving issuance of a deed, "[t]he act of approval was the thing essential" to create the right to the tax deed. See *Reid v. Morton*, 119 Ill. 118, 133 (1886) (rejecting a claim that a guardian's sale deed was invalid when the original order confirming the sale was not properly recorded prior to the issuance of a *nunc pro tunc* order approving the sale; the court reasoned that the effective approval came from the original order, not the subsequent *nunc pro tunc* order). Here, the critical "act of approval" was the issuance of the trial court's 2015 section 22-40(a) order. The subsequent *mandamus* order simply ensured that the original 2015 order was carried out as authorized. Thus, the 2016 tax deed was not void. Because the 2017 deed simply corrected the named recipient of the original deed to conform to the 2015 section 22-40(a) tax deed order, the 2017 deed was a continuation of the prior, erroneously drafted, deed. It is not disputed that the 2016 deed was clearly issued and recorded within the deadline imposed by section 22-85. Thus, the appellate court correctly affirmed the dismissal of amended count I of SI's pleading.

¶ 32        SI argues that it had no alternative options for seeking relief. Under the facts of this case, however, the available avenues for vacating the 2017 tax deed are clearly outlined in section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2016)):

> "Tax deeds issued under Section 22-40 are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Sections 2-1203 or 2-1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under those Sections with respect to final orders and judgments in other proceedings. The grounds for relief under Section 2-1401 shall be limited to:
>
> > (1) proof that the taxes were paid prior to sale;
> >
> > (2) proof that the property was exempt from taxation;
> >
> > (3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or
> >
> > (4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30."

¶ 33        Because the time for appeal of the 2015 section 22-40(a) order directing the issuance of the tax deed has long passed, SI was limited to seeking relief under section 2-1203 (735 ILCS 5/2-1203 (West 2016)) or section 2-1401 (*id.* § 2-1401). Indeed, SI and Cadijah Brown filed a section 2-1203 motion to vacate that order, but that motion was dismissed for their lack of standing. SI's appeal from that dismissal was also dismissed because SI Resources was not a party to the underlying tax deed proceeding and Cadijah Brown's section 2-1203 petition was not timely filed. *In Re Application for Tax Deed*, 2017 IL App 5th 160230-U.

¶ 34        With that avenue foreclosed, SI could still seek relief under one of the four limited grounds enumerated for a section 2-1401 petition. Even if we construed

amended count I of SI's pleading as implicitly seeking relief under section 2-1401, however, SI fares no better. Because the allegations in that count do not allege any of the grounds listed in section 22-45, the trial court again properly dismissed count I.

¶ 35    To support its position, SI correctly asserts that pleadings should be liberally construed when determining whether they should survive a motion to dismiss to ensure that substantial justice is done. *First National Bank in De Kalb v. City of Aurora*, 71 Ill. 2d 1, 8 (1978). That principle, however, is not the only one to be considered when evaluating the viability of a collateral attack on a tax deed because those proceedings implicate two competing public policies.

¶ 36    In *In re Application of the County Collector*, 217 Ill. 2d 1 (2005), this court explained that a section 2-1401 petition to set aside a tax deed is a collateral attack on the underlying order. The public policy favoring a collateral attack on the tax deed order is rooted in the serious consequences for the property owner that can arise from the forced sale of a home. The competing public policy disfavoring those collateral attacks recognizes the importance of ensuring the finality and marketability of the tax deed. Tax sale purchasers are motivated by the prospect of obtaining a marketable title. *Id.* at 17. If that motivation is frustrated, they will not participate in future tax sales. *Id.* at 17-18. Without the potential consequence of a tax sale, "delinquent taxpayers lose the incentive to pay their real estate taxes and tax revenues fall." *Id.* The court then provided an overview of how the state legislature has balanced those competing public interests over the years.

¶ 37    Before 1951, the county clerk made the administrative decision on whether the statutory requirements for a tax deed had been met. *Id.* at 18. In 1951, the predecessor to the Property Tax Code (Ill. Rev. Stat. 1951, ch. 120, ¶ 482 *et seq.*) changed that. *In re Application of the County Collector*, 217 Ill. 2d at 18. It was enacted, "in large part, to improve the marketability and validity of tax titles in order to reduce real estate tax delinquencies." *Id.* At that point, issuing a tax deed became a judicial function that was initiated with a petition, and the tax deed order became "incontestable" in the absence of a direct appeal. *Id.* at 18-19. The new provision did not provide for any collateral attacks, consistent with the stated intent that it should " 'be liberally construed so that tax deeds herein provided for shall convey merchantable title.' " *Id.* at 19 (quoting Ill. Rev. Stat. 1951, ch. 120, ¶ 747).

¶ 38    In *Southmoor Bank & Trust Co. v. Willis*, 15 Ill. 2d 388 (1958), the court considered the " 'delicate problem' " of construing that provision in light of the predecessor to section 2-1401. *In re Application of the County Collector*, 217 Ill. 2d at 19 (quoting *Southmoor Bank*, 15 Ill. 2d at 394). The court concluded " 'that the legislature desired to render tax titles incontestable except by direct appeal, subject to the provisions of [now-section 2-1401] of the Civil Practice Act,' " unless jurisdiction was lacking. *Id.* (quoting *Southmoor Bank*, 15 Ill. 2d at 394). The decision in *Remer v. Interstate Bond Co.*, 21 Ill. 2d 504 (1961), reiterated that conclusion and added that allegations of fraud could also be raised in what is now a section 2-1401 collateral attack. *In re Application of the County Collector*, 217 Ill. 2d at 19-20 (citing *Remer*, 21 Ill. 2d at 510, 514). In *Urban v. Lois, Inc.*, 29 Ill. 2d 542 (1963), this court explained the rationale for limiting collateral attacks on tax deed orders by noting it " 'would defeat the desired conclusiveness of the county court's order for the issuance of a tax deed. The consequent effect upon the merchantability of tax titles would place the annual sale in the same status as existed before the 1951 amendments and which the legislature intended to change.' " *In re Application of the County Collector*, 217 Ill. 2d at 20 (quoting *Urban*, 29 Ill. 2d at 549).

¶ 39    The relief that could be obtained in a collateral attack in a tax deed case was addressed again in *In re Application of the County Treasurer*, 92 Ill. 2d 400 (1982), where this court " 'adhere[d] to our previous holdings that [now-section 2-1401] relief in tax-deed cases is limited to those cases where fraud is proved or the judgment is void.' " *In re Application of the County Collector*, 217 Ill. 2d at 21 (quoting *County Treasurer*, 92 Ill. 2d at 408).

¶ 40    The legislature subsequently codified the grounds previously stated by this court for relief in collateral attacks on tax deed orders and "created a new, statutory ground for collateral relief that is available in certain circumstances where the tax deed order 'was effectuated pursuant to a negligent or willful error made by an employee of the county clerk or county collector.' Ill. Rev. Stat. 1991, ch. 120, par. 747." *Id.* Those grounds were expanded again to include cases alleging a lack of the proper notice. As later explained in section 22-45 (35 ILCS 200/22-45 (West 1994)), those grounds "express[ ] the balance struck by the legislature between the public policies of allowing collateral relief from tax deed orders and preserving the

marketability of tax deeds." *In re Application of the County Collector*, 217 Ill. 2d at 21.

¶ 41 In *In re Application of the County Collector*, 217 Ill. 2d at 25-27, this court also rejected a request that it set aside a tax deed by invoking its "equitable powers." The amendments enacted in 1990

> "added language, currently found in section 22-45 of the Property Tax Code, which states that '[t]he grounds for relief under Section 2-1401 shall be limited to' those enumerated in the statute. 35 ILCS 200/22-45 (West 1994). General, 'equitable principles' is not one of the grounds for relief listed in section 22-45." *Id.* at 27.

For those reasons, the court declined to consider arguments based in equity in seeking collateral relief to void a tax deed. *Id.*

¶ 42 Weighing competing public policy interests is a role best performed by the legislative branch. *Manago v. County of Cook*, 2017 IL 121078, ¶ 13. This court decided in *In re Application of the County Collector*, 217 Ill. 2d 1, not to reweigh the legislature's determination of how to balance the competing public policies underlying the statutory avenues available to obtain collateral relief in tax deed cases, and SI has presented no compelling reason to alter that decision now. Accordingly, we hold that the appellate court did not err in affirming the trial court's dismissal of count I of SI's amended pleading. In light of that holding, we need not address the issue of whether SI's section 22-85 claim could be properly raised in a declaratory judgment action.

¶ 43                                      III. CONCLUSION

¶ 44 For the reasons stated, the judgment of the appellate court upholding the dismissal of count I of the amended pleading is affirmed.

¶ 45 Affirmed.

- 15 -

¶ 46        JUSTICE MICHAEL J. BURKE, specially concurring:

¶ 47        Based solely on the unique and highly unusual facts of this case, I concur in the majority's judgment. I write separately to distance myself from the majority on two minor points and to clarify what is not being decided here.

¶ 48        First, I do not agree with the majority that the *mandamus* court's order was the equivalent of a *nunc pro tunc* order. The use of *nunc pro tunc* orders or judgments is limited to incorporating into the record something that was previously done by the court but inadvertently omitted by clerical error. *People v. Melchor*, 226 Ill. 2d 24, 32 (2007). A *nunc pro tunc* order is an entry now for something that was done on a previous date and is made to make the record speak now for what was actually done then. *Pestka v. Town of Fort Sheridan Co.*, 371 Ill. App. 3d 286, 295 (2007). The purpose of such orders is to correct the record for a clerical or inadvertent scrivener's error. *U.S. Bank National Ass'n v. Luckett*, 2013 IL App (1st) 113678, ¶ 27. This case does not involve a scrivener's error, and the court was not asked to make the record speak for something that was actually done before. It is not, for instance, a case in which the clerk intended to issue a deed to the Castlemans but inadvertently issued a deed that read "Castletons." Rather, the clerk intended to, and did, issue a deed to the Groomes, an entirely different party. Thus, I would not call the *mandamus* court's order a *nunc pro tunc* order, and that language is unnecessary to reach the majority's result.

¶ 49        Second, the majority states that SI's assertion that the 2016 deed was void is "unsupported by its *mandamus* complaint, *the* mandamus *court order*, the 'corrective' 2017 deed, and the applicable law." (Emphasis added.) *Supra* ¶ 29. However, the *mandamus* court order specifically finds the 2016 deed to be void. Paragraph 3 of that order reads: "Defendant concedes the tax deed issued on February 29, 2016 to William E. Groome and Vicki L. Groome was in violation of the October 19, 2015 Court order and is void." The order contradicts itself, however, by granting the writ of *mandamus* requested by SI. The complaint for a writ of *mandamus* did not assert that the original tax deed was void and ask that a new deed be issued to the Castlemans. Rather, as the majority notes, the complaint alleged that the Hamilton County clerk had a "non-discretionary statutory duty to reform the Tax Deed recorded as document number 2016-0000013." The complaint's prayer for relief reads as follows:

- 16 -

"WHEREFORE, SI RESOURCES, LLC, Plaintiff, prays that this Court grant its Complaint for Writ of Mandamus and enter an order compelling Defendant, Mary Anne Hopfinger, in her official capacity as the Hamilton County Clerk, to comply with the Hamilton County Circuit Court's October 19, 2015 Order by reforming the tax deed recorded with the Hamilton County Recorder of Deeds as document number 2016-00000313, to list Stephen R. and/or Opal Castleman as grantees and for such relief this court deems fair and just."

So, by granting the writ of *mandamus*, the court was ordering that the original tax deed be reformed. Consistent with the court's order, a "Corrective Tax Deed" was issued, and it specifically states that it is *correcting* the tax deed recorded on February 29, 2016. Thus, the *mandamus* court's assertion that the original tax deed was void is belied by the actions of the *mandamus* court.

¶ 50　　　Finally, I wish to emphasize that the *mandamus* court order was issued in a separate proceeding and that order was not appealed. Thus, today's opinion should not be read as expressing any position on the correctness of the procedures that were used in that case. Among the many questions that are not answered by this opinion are (1) whether *mandamus* was appropriate on these facts, (2) whether SI had standing to bring the *mandamus* complaint, (3) whether a corrective tax deed may be issued when the "correction" is to issue the deed to an entirely different party, (4) whether a court may simultaneously declare a tax deed void and order that it be reformed, and (5) whether the tax deed could be reformed in a proceeding in which neither the Groomes nor the Castlemans were made parties.

¶ 51　　　This court takes the case as it finds it, and where we find it is with a court having granted a writ of *mandamus* to reform a tax deed and with a corrective tax deed having been issued pursuant to the court's order. Moreover, it was SI who insisted that the deed should be reformed, and the order granting reformation was an *agreed order* between SI and the circuit clerk. The general rule is that, except as to *bona fide* purchasers without notice and those similarly situated, a reformed instrument relates back to, and takes effect from, the time of the original execution. 76 C.J.S. *Reformation of Instruments* § 101 (June 2021 Update); *L.E. Myers Co. v. Harbor Insurance Co.*, 67 Ill. App. 3d 496, 501-04 (1978); see also *Foley v. Worthington*, 209 P.2d 871, 872 (Okla. 1949) (corrected tax deed relates back to

and becomes effective from time of sale); *McCullough v. Young*, 175 P.2d 322, 324 (Okla. 1946) (under relation back doctrine, corrected tax deed becomes the original deed). Whether or not a corrective tax deed *should* have been issued, one was in fact issued, and it was done because SI filed a *mandamus* complaint seeking reformation of the original deed. Accordingly, based solely on the unusual and unique facts before the court, I concur in the court's judgment.

¶ 52     JUSTICE OVERSTREET took no part in the consideration or decision of this case.